# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1138

_____

United States of America,      *
                             *
        Appellee,      *
                             *      Appeal from the United States
    v.      *      District Court for the
                             *      Eastern District of Arkansas.
Amir Reza Katkhordeh,      *
                             *
        Appellant.      *

_____

Submitted: October 20, 2006
Filed: February 22, 2007

_____

Before SMITH, BOWMAN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted appellant Amir Reza Katkhordeh of knowingly making a false statement of material fact on his visa application, in violation of 18 U.S.C. § 1546(a). He was sentenced to a term of six months' imprisonment. Katkhordeh appeals, arguing that there was insufficient evidence to support the verdict. We affirm the judgment of the district court.[1]

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

## I.

Katkhordeh, a native and citizen of the Islamic Republic of Iran, immigrated to the United States on June 20, 2000. Prior to his arrival, Katkhordeh applied for and received a special preference visa under 8 U.S.C. § 1153(a)(2)(B), as the unmarried son of a lawful permanent resident. On his visa application, Katkhordeh listed himself as "Single (Never Married)." When asked to list the name of his spouse, if any, he replied "N/A (not applicable)," and he gave the same response when asked to list his children.

In 2003, Katkhordeh applied to join the Army Reserves. The military provides extra pay and benefits to soldiers with spouses and children, and Katkhordeh submitted a signed form stating that he had been married since 1993, and had a son who was born in 1998. He also submitted an English translation of his wife's Iranian identity card, which corroborated these statements. This document listed the date of marriage as 1993 and included the name of a son and his date of birth.

In November 2005, a grand jury charged Katkhordeh with knowingly making a false statement of material fact in his visa application. The indictment alleged that the application contained two false statements: (1) that Katkhordeh was unmarried, and (2) that Katkhordeh had no children. The district court instructed the jury that it could find Katkhordeh guilty if the government proved beyond a reasonable doubt that either statement knowingly misrepresented a material fact, so long as the jury agreed unanimously on at least one material misrepresentation. The jury returned a verdict of guilty.

## II.

Katkhordeh challenges the sufficiency of the evidence supporting his conviction. He argues the government failed to prove either that he was married at the

time he applied for a visa, or that his statement that he had no children was knowingly and materially false. When we review a claim that the evidence was insufficient to support a conviction, we view the evidence in the light most favorable to the prosecution. We accept all reasonable inferences in favor of the verdict, and affirm unless no reasonable juror could have convicted the defendant. *United States v. Walker*, 393 F.3d 842, 846 (8th Cir.), *cert. denied*, 126 S.Ct. 463 (2005).

Katkhordeh qualified for a special preference visa only if he was unmarried when he entered the United States. 8 U.S.C. § 1153(a)(2)(B). To convict Katkhordeh of falsely representing that he was unmarried, the government was required to prove beyond a reasonable doubt that Katkhordeh was indeed married prior to his entry into the United States on June 20, 2000. For evidence of this fact, the government relied on documents Katkhordeh submitted when he applied to the Army Reserves in 2003. In his signed application, Katkhordeh listed Fatemeh Lotfi Afshar as his spouse and stated that they were married on April 8, 1993. Katkhordeh's military file also included a copy of Afshar's Iranian identity card, which lists the same marriage date. Although there was a skirmish at trial about precisely how the identity card was furnished to the Army, Katkhordeh ultimately admitted that he submitted the document as proof of marriage and proof of a child. (T. Tr. at 376).

The government buttressed this documentary evidence with the testimony of FBI Agent Frederick Aldridge, who had interviewed Katkhordeh in the course of the criminal investigation. According to Aldridge, Katkhordeh admitted that the Iranian government considered him officially married in 1993, and that he considered himself married in 1997, just prior to the birth of his son. (T. Tr. 247).

Katkhordeh's defense at trial was that he and Afshar were not married, but had a relationship known in Iran as a *sigheh*. A *sigheh*, as recognized in *Shi'a* Islam, is a temporary relationship between a man and a woman that falls short of marriage. The defense relied primarily on Katkhordeh's testimony and four exhibits. First, a document titled "Common Law Marriage Covenant," which purports to be a *sigheh*

agreement between Katkhordeh and Afshar, and is dated April 8, 1993.  Second, an Iranian marriage certificate, stating that Katkhordeh and Afshar were married on July 10, 2000, after Katkhordeh arrived in the United States.  Third, an affidavit from an "Official Marriage Minister" in Iran stating that Katkhordeh's 1993 ceremony was a *sigheh*, not a permanent marriage.  Finally, an affidavit from Afshar, stating that she had been "in concubine relation with" Katkhordeh prior to his arrival in the United States.  A defense expert, an Iranian-born special education teacher, stated that although she had never before seen a *sigheh* agreement, she had no reason to question the authenticity of these documents.

A government expert questioned the reliability of the defense exhibits, and supported the validity of the government's documents.  The witness, Ladan Archin, is a native Iranian who works for the Department of Defense and specializes in Iran and Iraq policy.  Archin testified that Afshar's identity card, which lists the date of her marriage to Katkhordeh as April 1993, appears to be a copy of an official Iranian document.  In contrast, Archin testified that defense exhibit 7, purporting to be a "Common Law Marriage Covenant," does not resemble an official *sigheh* agreement, because it is handwritten and contains no government stamps.  Archin also opined that it was unlikely, after Afshar became pregnant in 1997, that Katkhordeh and Afshar remained in a *sigheh* as opposed to an official marriage, because unwed mothers in Iran are extremely rare.  Archin testified that the date on the defense's marriage certificate, July 10, 2000, could have been the date Katkhordeh recorded his marriage, rather than the actual date of his marriage.  Finally, Archin testified that in her opinion, based on the documentary evidence and her knowledge of Iranian culture, Katkhordeh and Afshar were married in 1993.

We conclude that the evidence was sufficient to allow a reasonable juror to convict Katkhordeh for falsely stating that he was unmarried when he entered the United States.  Katkhordeh's signed application to the Army Reserves stated that he was married in 1993, and he submitted his wife's official Iranian identity card to confirm this information.  While the defense countered with documents of its own, a

reasonable juror could have credited the government's evidence, especially in light of expert testimony that cast doubt on the defense exhibits and offered an expert opinion that Katkhordeh was married in 1993. The jury was also entitled to discount Katkhordeh's testimony that his 1993 relationship was merely a *sigheh*, in light of his statements to the Army Reserves and to FBI agents that he was married in 1993 or 1997. Based on this evidence, a reasonable juror could have found that Katkhordeh was married prior to 2000.

Katkhordeh argues that the government did not introduce "normal evidence of marriage," such as proof that Katkordeh and Afshar shared the same name, household, and finances. Relying on *Garcia-Jaramillo v. INS*, 604 F.2d 1236, 1238 (9th Cir. 1979), he argues that "valid marriages entered into by parties not intending to live together as husband and wife are not recognized for immigration purposes." *Adams v. Howerton*, 673 F.2d 1036, 1040 (9th Cir. 1982). *Garcia-Jaramillo*, however, simply recognized that where an alien enters into a "sham" marriage with an American citizen for the purpose of evading the immigration laws of the United States, the alien will not be eligible for benefits accorded to certain "married" aliens. There is no suggestion that Katkhordeh's marriage in Iran prior to 2000 was undertaken for the purpose of evading the immigration laws, so the precedents concerning "sham" marriages in the immigration context are inapplicable. The absence of sharing arrangements for names, households, and finances does not, as a matter of law, render a legally married person nonetheless "unmarried" for purposes of 8 U.S.C. § 1153(a)(2)(B), such that he is eligible for a special preference visa.

Katkhordeh also argues that there was insufficient evidence to show that he made a false statement on his visa application when he claimed to have no children. He contends that his statement was not material to his visa application, *see United States v. West Indies Transp., Inc.*, 127 F.3d 299, 305 (3d Cir. 1997), and that there was insufficient evidence that he knew he had a child at the time he applied for a visa. We need not consider these points, because there was sufficient evidence to convict Katkhordeh on the ground that he falsely claimed in his visa application that he was

unmarried. When the district court submits to the jury two grounds for conviction, one of which is supported by sufficient evidence and one of which is not, and it is impossible to tell on what ground the jury unanimously convicted the defendant, we assume the jury based its general verdict of guilty on the sufficient ground. *United States v. Mullins*, 446 F.3d 750, 756-757 (8th Cir. 2006); *see Griffin v. United States*, 502 U.S. 46, 56-57 (1991). Therefore, even assuming for the sake of argument that the evidence was insufficient to convict Katkhordeh for making a false statement regarding his child, the verdict would stand.

*    *    *

For these reasons, the judgment of the district court is affirmed.

_____