**TOKYO ELECTRON ARIZONA, INC., Plaintiff,**

v.

**DISCREET INDUSTRIES CORP., et al., Defendants.**

**No. CV 01–3245(DRH)(WDW).**

United States District Court, E.D. New York.

April 3, 2003.

Edgar H. Haug, Kevin Murphy, David A. Zwally, Frommer Lawrence & Haug, LLP, New York City, for plaintiff.

A. Richard Ross, Dennis F. Gleason, Richard K. Matanle, II, John N. Bain, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Roseland, NJ, Thomas W. Gandolfo, Oppenheimer Wolff & Donnelly LLP, New York City, Stuart I. Friedman, Friedman, Wittenstein & Hochman, Edward A. Friedman, Friedman & Kaplan, Peter J. Toren, Sidley Austin Brown & Wood LLP, New York City, Gordon S. Bueler, Bueler Jones LLP, Chandler, AZ, for defendants.

## ORDER

WALL, United States Magistrate Judge.

By sealed order dated January 29, 2003, the plaintiff, Tokyo Electron Arizona ("TAZ"), was awarded reasonable attorney's fees and costs pursuant to Federal Rule 37, to be recovered from the defendants, Discreet Industries and Ovadia Meron ("Discreet"), in connection with TAZ's July 16, 2002 motion to compel and subsequent motion for contempt. After an extension of the time in which to submit papers in support of the award of fees and costs, chambers received the plaintiff's supporting papers on February 20, 2003. The defendants' papers in opposition were received on March 5, 2003 and the plaintiff's reply papers were received on March 19, 2003. In its papers, the plaintiff seeks a total award of $69,901.94.

For the reasons set forth below, the court awards $55,751.79 in fees and $5386.19 in costs, for a total award of $61,137.98.

## DISCUSSION

The facts underlying the award of fees and costs are set out at length in the January 29 Order and will not be repeated here, where the only issue is the amount to be awarded. The plaintiff's initial papers set forth the amount of attorney's fees and costs, supported by declarations from the attorneys, Edgar H. Haug, a partner at the law firm of Frommer, Lawrence & Haug ("FL & H"), Kevin Murphy, a senior associate at that firm, David A. Zwally, an associate, and Nathan D. Weber, a new associate awaiting admission, along with declarations from Randy Levine, FL & H's Director of Technology, and Christopher R. Faron and Layla Hani, who are paralegals at the law firm. Annexed to the declarations are redacted time sheets that set forth a brief description of the work done by each person, the amount of time spent on it, and the amount billed, with handwritten notations that the plaintiff says indicate the "actual time spent on these motions or underlying document review related to the motions." 2/19/03 Zwally Letter at 2. The plaintiff also seeks reimbursement for 2.5 hours of work done by a former employee, Matthew Kelleher, for whom no declaration has been submitted.

The summary table created by the plaintiff sets forth the following information:

| Attorney | Hours Billed | Rate | Total |
|---|---|---|---|
| Edgar Haug | 16.1 | $510 | $ 8,211 |
| Kevin Murphy | 117.925 | $280 | $33,091 |
| David Zwally | 80.3 | $180 | $14,454 |

| Paralegal/L. Clerk | Hours Billed | Rate | Total |
|---|---|---|---|
| Nathan D. Weber | 29.8 | $175.74 | $ 5,237 |
| Matthew Kelleher | 2.5 | $105 | $ 262.50 |
| Christopher Faron | 22.05 | $105 | $ 2315.25 |
| Layla Hani | 2.0 | $110 | $ 220 |

| Technical Staff | Hours Billed | Rate | Total |
|---|---|---|---|
| Randy Levine | 7.0 | $175 | $ 1,225 |

| Total | | | $65,015.75 |
|---|---|---|---|

TAZ's costs under 28 U.S.C. § 1920 are set forth as:

| Copying costs | $4307.59 |
|---|---|

| | |
|---|---|
| Transcripts | 578.60 [1] |
| Total | $4886.19 |

The plaintiff argues that the time spent and the hourly rates are reasonable, but the defendants do not agree. They oppose the amounts sought on several grounds, claiming that both the hourly billing rates and the amount of time spent are excessive, and that the supporting documents do not meet the required level of specificity or contemporaneity. The court will address the objections, addressing the fees sought for Mr. Levine's work separately, inasmuch as that application raises several novel issues. `

### 1. Attorney's Fees:

In this Circuit, attorney's fee awards are determined by calculating the "lodestar" figure, which is based on the number of reasonable hours expended, multiplied by a reasonable hourly rate. *See Cruz v. Local Union No. 3 of the Int'l Brotherhood of Elec. Workers,* 34 F.3d 1148, 1159 (2d Cir.1994) (citing *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1263 (2d Cir.1987)). The party seeking reimbursement bears the burden of proving the reasonableness and necessity of hours spent and rates charged. *See generally, New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983). To this end, a fee application must be supported by contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates. *Id.* at 1147–48.

■ *Contemporaneous time records:* The defendants complain that TAZ's time records do not meet the applicable standard of specificity through contemporaneous time records. *See* Discreet's Objections to the Application of TAZ for Attorney's Fees and Costs at 2. Discreet argues that the attorney declarations are "vague, almost cryptic in the description of work, and are incomplete." Discreet's Objections at 3. Discreet also challenges the use of handwritten notations of time and the redaction of some information in the time records. The court disagrees with Discreet's opposition. While

TAZ's records are not, in some instances, abundantly detailed, the level of detail is sufficient to meet the requisite standard.

As TAZ explains in its Reply Memorandum and in the Murphy Declaration, the time records submitted are copies of computer printouts from FL & H's accounting program and reflect the firm's requirement that lawyers and other employees keep contemporaneous logs of billable time. As TAZ notes, the Supreme Court has found that counsel is not required to record each moment's work in detail, but should identify the general subject matter of the time expended. *See* TAZ Reply Mem. at 5 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437n, 103 S.Ct. 1933, 76 L.Ed.2d 40.12 (1983)). A fee applicant can rely on monthly computer printouts that are based on contemporaneous entries to satisfy the time record requirement. *See Cruz,* 34 F.3d at 1160–61; *see also Mautner v. Hirsch,* 831 F.Supp. 1058, 1076–77 (S.D.N.Y.1993), *rev'd on other grounds,* 32 F.3d 37 (2d Cir. 1994).

As to the redaction of some information, TAZ argues that it redacted portions of its time records that were "immaterial to its fee application and that were protected as confidential work product.... Without redacting the entries, Discreet would have improper access to TAZ mental impressions and legal theories as precisely described on the time records." Reply Mem. at 6. The court finds this explanation reasonable and explanatory of TAZ's use of handwritten notations to indicate the amount of reimbursement sought. As TAZ states, the handwritten numbers "represent the time billed to the unredacted description as opposed to the computer number, which represents the time billed for all transactions—redacted and unredacted." *Id.; see also* 3/18/03 Murphy Decl. at ¶ 4. "After reviewing their daily logs, Messrs. Murphy, Zwally and Faron calculated these handwritten figures." *Id.* The handwritten figures, which are the amounts used in calculating the fees claimed, are, in other words, lower than the amounts actually

---

1. This figure includes $156 for the transcript of the December 13 conference, an amount inadvertently omitted from TAZ's original submission. See TAZ Reply Mem. at 10; Zwally Decl., Ex. B.

billed.[2] The court finds that the documentary presentation of the claimed fees and costs meets the standard for contemporaneous time records that set forth the number of hours spent by each attorney, the nature of the work done, and the dates.

■ *Reasonableness of the Hourly Rates:* Discreet also complains that the rates charged are excessive. The lodestar figure should be " 'in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.' " *Id.* (citing *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *see also Hensley,* 461 U.S. at 433, 103 S.Ct. 1933). The "prevailing community" that a district court should consider is usually " 'the district in which the court sits,' unless there has been a showing that 'special expertise of counsel from a . . . [different] district was required.' " *Id.* (citing *Polk v. New York State Dep't of Correctional Servs.,* 722 F.2d 23, 25 (2d Cir. 1983)).

In this district, however, where lawyers from the Southern District frequently appear, the sometimes higher rates charged by Southern District attorneys such as the FL & H firm have been awarded in Eastern District litigation. *See, e.g., New Leadership Comm. v. Davidson,* 23 F.Supp.2d 301, 305 (E.D.N.Y.1998). In *New Leadership,* the court affirmed the application of Southern District rates to an Eastern District case and rejected the defendants' argument that *Luciano v. Olsten Corp.,* 109 F.3d 111 (2d Cir. 1997), flatly prohibits a court from taking into consideration rates charged in any district other than the one in which the court sits. *Id.* at 304. In *Luciano,* the trial judge had, in his discretion, declined to apply prevailing Southern District rates in awarding attorney's fees to a Manhattan-based lawyer in an action litigated in the Eastern District courthouse then located in Uniondale. *See*

*Luciano v. Olsten Corp.,* 925 F.Supp. 956 (E.D.N.Y.1996). The Second Circuit affirmed the trial court's use of its "broad discretion" to set reasonable attorneys' fees and stated that, "because this action was commenced and litigated in the Eastern District of New York, the district court's reliance on [Eastern District] rates was proper." *Luciano,* 109 F.3d at 115–16.

But, as the court in *New Leadership* found, *Luciano* does not hold that Southern District rates can never be considered in fixing rates in the Eastern District. *See New Leadership,* 23 F.Supp.2d at 304. In so holding, the court in *New Leadership* recounted the historical and geographical contexts that led to the creation of two separate districts that divide the City of New York, and noted that the uniqueness of the Eastern and Southern Districts' proximity had led to such innovations as the adoption of one set of local rules that are nearly identical for both districts, and the relaxation of the usual district residence requirement for district judges and United States attorneys. *Id.* at 304–05.

The undersigned agrees that it is not improper or unreasonable to apply Southern District rates to litigation in this district, at the judge's discretion, even if the litigation has taken place not in Brooklyn, a borough of New York City, but in Central Islip, a satellite courthouse of the Eastern District. This result is especially appropriate in the context of fees awarded under Rule 37, as here. The Second Circuit has warned litigants that "a party who flouts [discovery] orders does so at his own peril." *Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67, 73 (2d Cir.1988). Discreet and Meron well knew that they risked the imposition of attorney's fees in refusing to comply with the court's discovery orders, and knew further that the plaintiff was represented by attorneys from the Southern District [3].

---

**2.** Because TAZ is not seeking reimbursement for the portions of the billing records redacted as work product, and the defendant is in no way prejudiced, the court need not analyze whether the work product doctrine should apply, but accepts TAZ's claim that it does for the purposes of this motion. Moreover, the redacted entries are sufficiently detailed for fee award purposes.

**3.** The court notes that, in this action, neither party's attorneys are indigenous to the Eastern District. Discreet's counsel, Dennis Gleason, has offices in Roseland, New Jersey.

Moreover, the party who has suffered the adverse impact of recalcitrance in the discovery process should not be further punished by being awarded arbitrarily imposed, lower attorney's fees than the ones they have actually paid, simply because their lawyers are from Manhattan. Thus, this court, in its discretion, will consider the Southern District as the relevant community for evaluation of the reasonableness of TAZ's attorneys' rates.

Looking to that community, the court finds that, with one exception, each attorney's and paralegal's customary rate is consistent with prevailing market rates in the Southern District of New York. Here, the court finds rates of $280 for senior associate, $180 for junior associates, and between $115–110 for paralegals to be reasonable prevailing market rates. In making this finding, the court recognizes the cases cited to by Discreet that awarded lower rates, but notes that, when reviewing caselaw that comments on prevailing market rates, a court must take into account the rapidity with which such rates can rise. Thus, a case decided even as recently as 2000 could be out of date as far as the rates are concerned.

Mr. Haug's $510 hourly rate, however, although not unusual for a name partner of his experience in a specialized area of law at a Manhattan firm, is rather too high to be considered a reasonable prevailing market rate for the purposes of the attorney's fee award at issue here. The court recognizes Mr. Haug's considerable experience and specialization, but finds that $400 is a sufficient hourly compensation for the time he spent on this matter. See M.L. v. Board of Ed. of City of New York, 2003 WL 1057476, at *2, 2003 U.S. Dist. LEXIS 3473, at *6–7(S.D.N.Y. Mar. 10, 2003) (awarding $375 per hour for lead attorney and noting rates of $350 per hour for attorneys with more than 15 years of experience, and $250 to $390 per hour for senior attorneys).

In reaching these conclusions, the court notes that TAZ has not submitted affidavits from other attorneys in the Southern District who charge at comparable rates. That omission is not, however, fatal to the application. "A district court's 'choice of rates [is] well within [its] discretion.'" Cruz, 34 F.3d at 1160 (quoting Cabrera v. Jakabovitz, 24 F.3d 372 (2d Cir.1994)). This court agrees with the Cruz court's observation that, "[w]hile it is true that it may have been desirable for the district court to have been provided with affidavits from other practicing, similarly situated attorneys, such information was not indispensable," and the determination could be made on the basis of experience. Id.; see also Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir.1992)(court looks to own familiarity and experience with case and general experience as well as to parties' evidentiary submissions and arguments.)

Reasonableness of Time Spent: Discreet also argues that the amount of time spent was excessive, offering specific examples from the records. As Discreet notes, judges should "use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent and rates charged in a given case." Discreet's Opp. at 6 (citing Clarke, 960 F.2d at 1153). The undersigned's experience with this case has demonstrated that it is both complex and hard fought, and that the work product received from TAZ's attorneys has been consistently thorough and extremely well done. My experience with the practice of law teaches that such high caliber work can only be the result of long, hard hours of work.

Practical experience also teaches, however, that some overlap of efforts often occurs in litigation such as this, and some greater economy of time might have been used. To reflect this, the court will, exercising its discretion, reduce the number of overall hours by 10%. See Carey, 711 F.2d at 1146 (noting that courts have "endorsed percentage cuts as a practical means of trimming fat from a fee application"); M.L. v. Board of Ed., 2003 WL 1057476, at *4–5, 2003 U.S. Dist. LEXIS 3473, at *13–14 (reducing total award by ten percent); Envirosource, Inc. v. Horsehead Resource Dev. Co., 981 F.Supp. 876, 884 (S.D.N.Y.1998) (reducing total number of hours by 25%); see also Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir.1994) (district court not required to "set forth item-by-item findings concerning what may be count-

less objections to individual billing items") (*per curiam*).

Applying the reduction of Mr. Haug's hourly rate to $400 and the 10% reduction in hours spent, the chart of fees to be awarded is as follows:

| Attorney | Hours Billed | Rate | Total |
|---|---|---|---|
| Edgar Haug | 14.49 | $400 | $ 5796 |
| Kevin Murphy | 106.13 | $280 | $29,716.40 |
| David Zwally | 72.27 | $180 | $13,008.60 |

| Paralegal/L. Clerk | Hours Billed | Rate | Total |
|---|---|---|---|
| Nathan D. Weber [4] | 26.82 | $175.74 | $ 4713.34 |
| Matthew Kelleher [5] | 2.25 | $105 | $ 236.25 |
| Christopher Faron | 19.84 | $105 | $ 2083.20 |
| Layla Hani | 1.8 | $110 | $ 198 |

**Total Attorneys' Fees:** $55,751.79

### 2. Costs for Copying and Transcripts:

TAZ also seeks copying costs in the amount of $4307.59 and transcript costs in the amount of $578.60. Despite Discreet's arguments to the contrary, the court finds these costs to be reasonable and awards them. Discreet argues, specifically, that the costs sought are not recoverable pursuant to 28 U.S.C. § 1920, which requires that copies of papers be "necessarily obtained for use in the case," and that the cost of "copies produced for the attorneys' own use" or convenience are not taxable. Discreet Mem. in Opp. at 14–15 (quoting *Universal City Studios, Inc. v. Nintendo Co., Ltd.,* 1986 WL 11462 at *2 (S.D.N.Y.1986)). Discreet argues that copies of the documents that it produced just prior to the start of the contempt motion hearing on December 2 were "never submitted as part of the contempt hearing or any of the submissions," and that the $4,307.59 for photocopies is not taxable. *Id.* at 15. The court disagrees.

The January 29 Order awarded TAZ all of the reasonable expenses incurred in connection with the motion for contempt. After the December 2 hearing, the court ordered TAZ to review the belatedly produced documents and scheduled a follow-up hearing on December 13 to determine the nature of the documents and how they related to the sanctions that would be imposed. Thus, the copies that were made were directly related to the continuing hearing on the motion for contempt. The cost of the transcripts is also recoverable, and was specifically awarded in the January 29 Order. Moreover, the court finds the amounts sought to be reasonable. Counsel for TAZ argues that two sets of copies of the documents were necessary because TAZ's counsel had a short time frame in which to review to prepare for the conference on December 13, and presumably more than one attorney was involved. The court accepts this explanation. If Discreet had produced the documents when it was supposed to, it could have avoided the costs altogether. Instead, it waited until the eleventh hour. Thus, the court will award $4,307.59 for copying costs and $578.60 for transcripts.

### 3. Expense Associated with Power Point Presentation:

TAZ prepared, as an exhibit for the hearing on the motion for contempt, a computer generated Power Point presentation of the relevant dates and events underlying the motion. Paper copies of the charts were also included as an exhibit in the papers in support of the motion. The live presentation was very effective, and the court found the paper copies to be quite helpful when drafting the January 29 order. On this motion, TAZ seeks reimbursement for the Power Point presentation in the form of $1,225 in fees for Randy Levine, the Director of Technology at FL & H.

█ As a threshold matter, the court must determine whether this expense should be considered as a cost or a fee or a Rule 37 expense. TAZ has applied for reimbursement of $1,225 for seven hours of Mr. Levine's work at $175.00 per hour. Discreet objects to this fee on several grounds, arguing, *inter*

---

4. Although the court does not know why the rates for Mr. Zwally, a third year associate, and Mr. Weber, a first year associate awaiting admission, are so similar, the rate is reasonable for either of them, and the court will not reduce it. See Discreet Mem. in Opp. at 13.

5. Discreet has objected to the award of any fees for Mr. Kelleher, who has not submitted a declaration. TAZ has satisfactorily explained that Mr. Kelleher is no longer employed by FL & H and could not be found to submit a declaration. The court accepts this argument and declines to disallow the minimal amount attributable to his work.

*alia*, that his hourly rate is too high for non-legal staff. See Discreet Mem. in Opp. at 13. Discreet argues that "Even assuming that fees for Mr. Levine are recoverable, TAZ offers no evidence as to what is an appropriate hourly rate and why." *Id.* at 14.

The issue arises as to whether expenses associated with work done by a Director of Technology are reimbursable as fees. In its reply brief, TAZ cites to *Selby v. Arms,* 1995 WL 753894, 1995 U.S. Dist. LEXIS 18876 (S.D.N.Y. Dec. 20, 1995), for support, noting that *Selby* awarded the cost of a private detective as a reasonable expense under Rule 37(b). The term "reasonable expense" is used broadly in Rule 37(b), and includes attorney's fees, which have been held in a non-Rule 37 context to include the work done by paralegals and other non-lawyers. *See United States Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir.1989) (construing *Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) as deciding that "attorney's fees awards could include time billed by paralegals and other non-lawyers"). The court, however, views Mr. Levine's work as more of a cost than a fee.[6] Mr. Levine describes his work as the preparation of "demonstrative material for [the contempt] hearing," (Levine Decl., Ex. A), and the preparation and presentation of demonstrative material is traditionally considered as a cost, not a fee.

■ As a cost, its eligibility is governed by 28 U.S.C. § 1920, which enumerates the categories of costs and fees that a judge or clerk may tax. To be compensable, a particular expense must fall into one of the categories of costs statutorily authorized for reimbursement. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441–42, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). Here, the only arguably relevant category is set forth in 28 U.S.C. § 1920(4): "Fees for exemplification and copies of papers necessarily obtained for use in the case."

The Second Circuit has taken a rather broad view of what is included in the category of exemplification, holding that "[u]nder § 1920(4) a prevailing party is entitled to 'the reasonable expense of preparing maps, charts, graphs, photographs, motion pictures, photostats and kindred materials.' 6 Moore's Federal Practice P 54.7776[6], at 1739 (2d ed.). This has been construed to permit awards of costs for statistical consulting costs and computer expenses, e.g., *EEOC v. Kenosha Unified School Dist. No. 1,* 620 F.2d 1220, 1227–28 (7th Cir.1980)...." *In re Air Crash Disaster at John F. Kennedy Int'l Airport,* 687 F.2d 626, 631 (2d Cir.1982). *Cf. Cefalu v. Village of Elk Grove,* 211 F.3d 416, 427 (7th Cir.2000) (defining an exemplification as meaning "an act of example ... a connotation broad enough to include a wide variety of exhibits and demonstrative aids"); *but see Arcadian Fertilizer, L.P. v. MPW Indust. Servs., Inc.,* 249 F.3d 1293, 1296–97 (11th Cir.2001)(rejecting broad reading of exemplification from *Cefalu* and adopting narrow, traditional interpretation of exemplification as meaning only "an official transcript of a public record, authenticated as a true copy for use as evidence") & *Kohus v. Cosco, Inc.,* 282 F.3d 1355, 1359 (Fed.Cir.)(same; applying Sixth Circuit law), *cert. denied,* — U.S. ——, 123 S.Ct. 659, 154 L.Ed.2d 515 (2002).

The Second Circuit distinguished between the cost of "producing transcripts of a flight recorder tape ... including such research and analysis as is reasonably necessary for such preparation," which are reimbursable as exemplification under section 1920, and the "expense of an expert's research and analysis in preparing for trial, as distinguished from producing an exhibit," which is "not a recoverable cost." *Compare Cefalu,* 211 F.3d at 428 (rejecting distinction between cost of physical preparation of an exhibit as recoverable and cost of preparing an exhibit as nonrecoverable). The *In re Air Crash* court focused on research and analysis costs, noting that a "district court must therefor scrutinize such research expense requests to determine whether the research involved was necessary to the production of a necessary map, survey, or, as in this case, transcript, and was not merely general research done

---

**6.** The court makes this finding on the record before it, and in the narrow context of this motion, and does not intend a broad holding that fees of a Director of Technology may not be recovered as fees under any circumstances.

only for the purpose of preparing for trial." *Id.*

Adding another layer to the analytical background, Local Rule 54.1(6) for the Southern and Eastern Districts specifically states that "Costs of maps, charts, and models, including computer generated models, are not taxable except by order of the court."

With this background in mind, based on the record before it, the court finds that the claimed expenses associated with Mr. Levine's work are partially recoverable. The court supports the use of technology to improve the presentation of information to the a jury and/or to the bench, and notes that the Power Point presentation at issue was very helpful, in both its video and paper formats. Further, Mr. Levine's contribution to the creation of the charts is sufficiently akin to the preparation of exhibits allowed as an exemplification by the Second Circuit to allow some reimbursement, but there is not enough of a record to support an award of the full amount claimed. Thus, the court will award $500 as a reasonable cost for this item, bringing the total award of costs to $5386.19.

**SO ORDERED.**