AKANTHOS CAPITAL MAN-
AGEMENT, LLC, et al.,
Plaintiffs,

v.

COMPUCREDIT HOLDINGS
CORPORATION, et al.,
Defendants.

Civil Action No. 1:10–cv–844–TCB.

United States District Court,
N.D. Georgia,
Atlanta Division.

Signed March 7, 2014.

Harry N. Niska, Jeff I. Ross, John Orenstein, Ross & Orenstein, LLC, Minneapolis, MN, Heather Smith Michael, Karen Barris Bragman, Kevin B. Getzendanner, Arnall Golden & Gregory, Atlanta, GA, for Plaintiffs.

Christopher W. Madel, K. Craig Wildfang, Randall Tietjen, Robins Kaplan Miller & Ciresi, Minneapolis, MN, J. Timothy Mast, James David Dantzler, Jr., Thomas B. Bosch, Troutman Sanders, LLP, Jeffrey O. Bramlett, John H. Rains, IV, Naveen Ramachandrappa, Bondurant Mixson & Elmore, Janna Satz Nugent, Michael James King, Greenberg Traurig, LLP, Atlanta, GA, for Defendants.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This case is before the Court on Defendants' bill of costs [215] and renewed motion for costs [236] and Plaintiffs' objections thereto [218].

### I. Background

The history of this case is long and need not be recited in its entirety. But to decide whether to award costs, the Court must at least provide a brief summary.

This suit was filed in December 2009 in the District of Minnesota. In March 2010 it was transferred here. In April Plaintiffs moved for a preliminary injunction to stop Defendant CompuCredit from repurchasing its corporate notes. On May 12 the Court held a hearing and denied the motion for a preliminary injunction. The case proceeded: the litigants conducted discovery and Defendants moved to dismiss. After two trips to the Eleventh Circuit, Plaintiffs' claims were dismissed in 2013. Defendants now request $92,327.40 in costs, and Plaintiffs object.

### II. Applicable Law

The Federal Rules permit awards of costs to prevailing parties, Fed.R.Civ.P. 54(d)(1), and create a presumption in favor of awarding costs. *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir.1991). Cost awards are reviewed for abuse of discretion, *id.*, but district courts' discretion is not unfettered; it is limited by statute, *see Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). The limiting statute confines taxable costs to the following categories:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title; [and]

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services....

28 U.S.C. § 1920.

## III. Discussion

### A. Costs to which Plaintiffs Have No Objection

Plaintiffs do not object to an award of $1,100.53 in costs for clerk and transcript fees and for paper copies. An award of those costs is permitted by §§ 1920(1), (2) and (4), so the Court will award them as unopposed.

### B. Costs to which Plaintiffs Object

Plaintiffs object to two categories of costs requested by Defendants: *first*, $25,965.26 for graphics and technology consulting services for the May 12, 2010 preliminary injunction hearing; and *second*, $65,261.61 for the cost of electronic discovery. Defendants argue that § 1920(4) permits an award of both categories of costs; Plaintiffs disagree.

#### 1. Graphics and Technology Consulting Services

*First*, Defendants are not entitled to an award of the costs of graphics and technology consulting services. Defendants request an award of $25,965.26 in costs paid to an outside vendor, FTI Consulting, to create physical and electronic exhibits for the hearing and to provide technology support at the hearing. Seven FTI professionals billed a total of 99.5 hours at rates ranging from $175 to $375 per hour. Tasks completed by FTI included "designing graphics concepts," "prepar[ing] visuals" and "prepar[ing] demonstratives" for the hearing, "on-site graphics support" at the hearing, and "on-site ... support" of trial-presentation software during the hearing.

The relevant subsection of § 1920 permits an award of costs for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" 28 U.S.C. § 1920(4). To be taxable, then, the consulting costs must fit into one of two categories: they must either be costs of exemplification or of necessary copies. *See Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir.2001).

##### a. Exemplification

 Binding Eleventh Circuit precedent dictates that none of the consulting costs fit into the exemplification category. In *Arcadian Fertilizer*, the Eleventh Circuit defined "exemplification" narrowly:

[W]e conclude that the term 'exemplification' [in § 1920(4) ] imports the legal meaning of '[a]n official transcript of a public record, authenticated as a true copy for use as evidence,' BLACK'S LAW DICTIONARY 593 (7th ed.1999), and not the broader and common connotation that includes 'a showing or illustrating by example.' WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 795 (1981).

*Id.* at 1297; *see also Hawk v. Klaetsch*, No. 12–0058–WS–B, 2013 WL 474356, at *1 n. 1 (S.D.Ala. Feb. 6, 2013) (citing *Arcadian Fertilizer's* narrow definition of exemplification as good law); *DuChateau v.*

*Camp Dresser & McKee, Inc.,* No. 10–60712–CIV, 2012 WL 1069166, at *3 (S.D.Fla. Mar. 29, 2012) (same). Under that narrow definition, Defendants' consulting costs are not taxable as exemplifications.

### b. Necessary Copies

■ Plaintiffs rely on *Arcadian Fertilizer* to support their argument that Defendants' consulting costs are also not taxable as necessary copies. The plaintiff in *Arcadian Fertilizer* won a jury verdict and requested costs for trial exhibits. The district court awarded costs, and the defendant appealed. The Eleventh Circuit separated the plaintiff's costs into two types: costs for creating oversized documents and color photographs, and costs for creating computer animations and video exhibits.

The Eleventh Circuit held that the first type of costs—oversized documents and color photographs—was taxable as necessary copies under § 1920(4). *Arcadian Fertilizer*, 249 F.3d at 1296–97. Because oversized documents and color photographs are "reproductions involving paper in its various forms," and because the subsection permitted awards of costs for "copies of paper," those costs could be taxed. *Id.* at 1296. But the second type of costs—computer animations and video exhibits—was not taxable because it could not be characterized as "paper." *Id.* Plaintiffs argue that this precedent prohibits an award of Defendants' consulting costs as necessary copies because the costs were incurred to create non-paper, electronic exhibits.

But *Arcadian Fertilizer* interpreted a now-outdated version of § 1920(4). In 2008, Congress amended § 1920(4) to broaden the definition of taxable copying costs. Previously the subsection permitted awards of costs only for "copies of papers," but now it permits awards of costs for "copies of any materials." *Compare id.* at 1296 (quoting the pre–2008 version of § 1920(4) as permitting awards of costs for "copies of papers"), *with Watson v. Lake County*, 492 Fed.Appx. 991, 996 (11th Cir.2012) (quoting the post–2008 version as permitting awards of costs for "making copies of any materials"); *see also* Judicial Administration and Technical Amendments Act of 2008, Pub.L. No. 110–406, § 6, 122 Stat. 4291 (amending § 1920(4)); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 165 (3d Cir.2012) (discussing the amendment and the section's history at length). Indeed, the Eleventh Circuit explicitly recognized that its opinion in *Arcadian Fertilizer* rested on the "copies of papers" language: it wrote that the costs of creating computer animations and video exhibits could not be taxed "[u]ntil Congress sees fit to amend the language of § 1920 to include the innovative technologies currently used in the production of demonstrative exhibits ...." *Arcadian Fertilizer*, 249 F.3d at 1297–98.

After *Arcadian Fertilizer* Congress did see fit to amend § 1920(4) to expand the category of taxable copying costs. The *Arcadian Fertilizer* holding on the scope of taxable copying costs is thus no longer binding: it interprets an outdated version of § 1920(4). Its holding rests on since-excised statutory language that forced a distinction between paper-like exhibits, which could be taxed under the earlier "copies of papers" language, and electronic exhibits, which could not be considered paper-like and so could not be taxed.

At least one of our sister district courts has recognized that this aspect of *Arcadian Fertilizer* is no longer persuasive in light of Congress's amendment of § 1920(4). In *Durden v. Citicorp Trust Bank, FSB*, No. 3:07–cv–974–J–34JRK, 2010 WL 2105921, at *4 n. 7 (M.D.Fla.

Apr. 26, 2010), District Judge Marcia Morales Howard explained that Congress's amendment of § 1920(4) in 2008 cast doubt on the *Arcadian Fertilizer* holding limiting taxable copying costs to paper exhibits. Judge Howard wrote that the distinction made by the Eleventh Circuit in *Arcadian Fertilizer* between two types of costs— those that can be characterized as paper-like and those that cannot—"appears to have been obviated by Congress." *Id.*

The Eleventh Circuit has not returned to decide whether § 1920(4), as amended, permits awards for the cost of creating electronic exhibits (or as stated by the circuit, for the cost of using "innovative technologies" to create "demonstrative exhibits" not made of paper, *Arcadian Fertilizer*, 249 F.3d at 1298). *See Bianchi v. Bronson & Migliaccio, LLP*, No. 09–61164–CIV, 2011 WL 379115, at *9 n. 9 (S.D.Fla. Feb. 2, 2011) ("[T]he Eleventh Circuit has not yet addressed the effect of [the 2008] amendment [to § 1920(4) ] on the *Arcadian Fertilizer* rule."); *accord CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1326 (Fed.Cir.2013) (same) (applying Eleventh Circuit law).

But even in the absence of current, binding precedent, *Arcadian Fertilizer* and the overall body of law suggest a preference in our circuit for a narrow construction of § 1920(4). *See Arcadian Fertilizer*, 249 F.3d at 1297 (narrowly construing the exemplification prong of § 1920(4) and contrasting the Seventh Circuit's "broader construction"); *see also Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp.*, 215 F.R.D. 60, 66 (E.D.N.Y.2003) (describing the Second Circuit's "broad view" of taxable exemplification costs under § 1920(4) and contrasting the Eleventh Circuit's "narrow, traditional interpretation"); *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 n. 5 (5th Cir. Unit B 1982) (distinguishing between the costs of "actually duplicating documents," which are recoverable, and of "gathering those documents as a prelude to duplication," which are not);[1] *Bianchi*, 2011 WL 379115, at *9 (describing the Eleventh Circuit's precedents as requiring a "strictly narrow reading of 28 U.S.C. § 1920"); *Jablonski v. St. Paul Fire & Marine Ins. Co.*, No. 2:07–cv–386, 2010 WL 1417063, at *12 (M.D.Fla. Apr. 7, 2010) (explaining that under *Arcadian Fertilizer*, the Eleventh Circuit has "construed narrowly" the definition of necessary copies).

And perhaps most importantly of all, the Supreme Court has tilted the balance in favor of declining to award borderline costs. In *Crawford Fitting*, the Court held that while Rule 54(d) gives district courts discretion in this area, that discretion "is not a power to evade ... specific congressional command. Rather, it is solely a power to *decline* to tax, as costs, the items enumerated in § 1920." *Crawford Fitting*, 482 U.S. at 442, 107 S.Ct. 2494 (emphasis added). The Supreme Court recently reaffirmed this principle, explaining in 2012 that it has "never held that Rule 54(d) creates a presumption ... in favor of the broadest possible reading of the costs enumerated in § 1920. To the contrary," the Court wrote, it favors a "narrow scope of taxable costs," which "are limited to relatively minor, incidental expenses." *Taniguchi v. Kan Pac. Saipan, Ltd.*, —— U.S. ——, 132 S.Ct. 1997, 2006, 182 L.Ed.2d 903 (2012); *see also Crawford Fitting*, 482 U.S. at 444, 107 S.Ct. 2494 (explaining the Supreme Court's understanding that Congress

---

1. Fifth Circuit Unit B decisions rendered after October 1, 1981 are binding precedent in the Eleventh Circuit. *United States v. Maxwell*, 579 F.3d 1282, 1305 n. 6 (11th Cir.2009) (citing *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc)).

"meant to impose rigid controls on cost-shifting in federal courts").

The Court reads these admonitions as instructing it to be wary of awarding costs that may arguably go beyond the scope of § 1920. *Accord Fells v. Va. Dep't of Transp.*, 605 F.Supp.2d 740, 743–44 (E.D.Va.2009) (recognizing "the Supreme Court's precept that district courts may decline to tax costs enumerated in § 1920, but cannot award costs not enumerated under § 1920" (citing *Crawford Fitting*, 482 U.S. at 442–45, 107 S.Ct. 2494)).

Without binding authority on the specific question, but keeping in mind the general preference for a narrow construction of § 1920(4), the Court must look to other sources of guidance.

### c. Defendants' Supporting Cases

Defendants point to several district court orders as support for an award of their consulting costs. None is convincing.

The first, *Tokyo Electron*, is inapposite. 215 F.R.D. 60. True, the court in that case awarded costs similar to the consulting expenses at issue here: it awarded $500 for "preparation of demonstrative material" for a hearing, at least part of which was a "Power Point presentation" in both "video and paper formats." *Id.* at 66–67. But the award rested entirely on the exemplification prong of § 1920(4). And the Second Circuit's definition of taxable exemplification costs is, as the *Tokyo Electron* court noted, "rather broad." *Id.* at 66. The Eleventh Circuit's definition, by contrast, is narrow. *See Arcadian Fertilizer*, 249 F.3d at 1297. In fact, the *Tokyo Electron* court itself pointed out the contrast: it explicitly compared the Second Circuit's broad view of taxable exemplification costs to the Eleventh Circuit's narrower view. It cited *Arcadian Fertilizer* and explained that in that case the Eleventh Circuit "reject[ed] [a] broad reading of exemplification ... and adopt[ed] [a]

narrow, traditional interpretation of exemplification." *Tokyo Electron*, 215 F.R.D. at 66 (quoting *Arcadian Fertilizer*, 249 F.3d at 1296–97).

Because its award was based on a broad definition of exemplification, *Tokyo Electron* pulls no weight for Defendants. Yes, it awarded similar costs, but it did so under Second Circuit law that conflicts with binding Eleventh Circuit precedent. The Court, as it must, follows the Eleventh Circuit.

The second case cited by Defendants, *Farberware Licensing Co. v. Meyer Marketing Co.*, No. 09 Civ. 2570(HB), 2009 WL 5173787 (S.D.N.Y. Dec. 30, 2009), is unpersuasive. That court awarded $25,000 for "trial graphics equipment" and "consultants" who prepared "graphics presented at trial." *Id.* at *8. But the court did not rest the award on any specific statutory authority. *See id.* (citing § 1920 generally but awarding costs without reference to a specific subsection). The court wrote only that the award was justified because the "documentary exhibits were voluminous" and the graphics "were helpful to the jury and the Court...." *Id.*

This Court must heed the fundamental rule that it is "bound by the limitations set out in 28 U.S.C. § 1920." *Arcadian Fertilizer*, 249 F.3d at 1296 (citing *Crawford Fitting*, 482 U.S. at 445, 107 S.Ct. 2494). While Defendants are correct that *Farberware* supports their position, the Court does not find enough solid ground therein to adopt its holding. *Farberware* is a cursory order, and it comes from a district court outside our circuit—one in which the law is significantly different from our own. *See Tokyo Electron*, 215 F.R.D. at 66 (contrasting Second and Eleventh Circuit law). It does not contain enough analysis to give the Court firm footing to contravene *Arcadian Fertilizer*, the most recent Eleventh

Circuit case on this issue, even if *Arcadian Fertilizer* rests on since-amended text.

Defendants next cite to a case from the Northern District of California in which the court awarded costs for "professional fees re visual aids." *In re Online DVD Rental Antitrust Litig.*, No. M 09–2029 PJH, 2012 WL 1414111, at *1 (N.D.Cal. Apr. 20, 2012). Like *Farberware*, the Court does not find the case persuasive because it did not identify the specific statutory authority for awarding costs. And the award was based at least partly on Ninth Circuit precedent permitting a "broad construction of section 1920." *Id.* (citing *Taniguchi v. Kan Pac. Saipan, Ltd.*, 633 F.3d 1218, 1221 (9th Cir.2011), *vacated*, —— U.S. ——, 132 S.Ct. 1997, 182 L.Ed.2d 903 (2012)).

Moreover, that Ninth Circuit precedent has been overturned by the Supreme Court. *See Taniguchi*, 132 S.Ct. 1997 (2012). And no such precedent for broad construction of § 1920 exists (or ever existed) in the Eleventh Circuit. To the contrary, *Arcadian Fertilizer*—even if its specific holding about necessary copies is obviated by the amendment to § 1920(4)— indicates a general preference for narrow construction of the section. *See supra* at 1310–11.

Finally, Defendants point to *Carroll v. Tavern Corp.*, No. 1:08–cv–2514–TWT, 2011 WL 6337649 (N.D.Ga. Dec. 16, 2011). In that case, Judge Thrash awarded costs to the prevailing defendants for "photographs and videos [that] were used during trial." *Id.* at *1–2. The photographs in *Carroll* were clearly taxable as necessary copying costs. Even under the restrictive "copies of paper" analysis from *Arcadian Fertilizer* and the pre–2008 § 1920(4), copies of photographs are paper-like and can be taxed. But taxing the cost of "a videotape used at trial and admitted as evidence" is problematic. *Id.* at *2. In *Arca-*

*dian Fertilizer* the Eleventh Circuit wrote that the cost of video exhibits could not be taxed. 249 F.3d at 1297–98. As discussed above, *Arcadian Fertilizer* is outdated precedent, but the Court is hesitant to directly contravene it without newer guidance from the circuit.

Defendants would like the Court to follow Judge Thrash's lead and tax the cost of non-paper exhibits, essentially overruling *Arcadian Fertilizer*. But in *Carroll* Judge Thrash did not distinguish or cite *Arcadian Fertilizer*. His order appears to contradict *Arcadian Fertilizer*'s holding, but he did not address whether he still considers it binding precedent. Judge Thrash's order is cursory, but for good reason: the amount of costs requested was small; the total cost for the photographs and videos was $1,077.50. *See* Bill of Costs at 10, *Carroll*, No. 1:08–cv–2514– TWT (N.D.Ga. Oct. 17, 2011), ECF No. 283–2. Here, Defendants request over $25,000. As with *Farberware*, the Court is not persuaded by *Carroll*.

Without persuasive guidance, and mindful of the general preference for narrow construction of the statute, the Court is unwilling to break new ground without new direction from the Eleventh Circuit. Accordingly, the Court holds that Defendants are not entitled to an award for the cost of graphics and technology consulting services.

### 2. Electronic Discovery

■ *Second*, Defendants are also not entitled to an award of the cost of e-discovery. Defendants seek an award of $65,261.61 in costs they incurred for processing electronically-stored information and maintaining it in a database. Defendants paid an outside vendor, Document Technologies, Inc., to perform e-discovery-related tasks, including $5,980.50 for "processing data (that is, copying it into data-

bases, de-duplicating the data, and indexing it for searching and review),"[2] $35,863.20 for "storing the data on DTI's servers," $22,260 for "user fees enabling attorneys and staff [for Defendants] to access the data" and $450 for "technical support services from DTI necessary to maintain the databases."[3] Plaintiffs resist the award, arguing that such costs are not within the ambit of § 1920.[4]

■ The Eleventh Circuit has not decided whether e-discovery costs are taxable as necessary copies.[5] *See Abbott Point of Care, Inc. v. Epocal, Inc.*, No. CV–08–S–543–NE, 2012 WL 7810970, at *2 (N.D.Ala. Nov. 5, 2012) ("Unfortunately, the Eleventh Circuit has not provided any clear guidance on" whether a litigant can recover "any costs for the creation and maintenance of an electronic discovery database under § 1920(4)."). Again, the Court must look elsewhere.

### a. Federal Circuit: *CBT Flint*

In an unusual twist, another court of appeals recently interpreted Eleventh Circuit law on this issue. The Federal Circuit reviewed an award of costs in a Northern District of Georgia patent case and applied Eleventh Circuit law to decide whether and to what extent e-discovery costs could be taxed. *See CBT Flint*, 737 F.3d at 1320 (applying Eleventh Circuit law).

■ Of course, Federal Circuit opinions, even those that interpret Eleventh Circuit law, are not binding on this Court when deciding non-patent issues such as cost awards under § 1920(4). *See, e.g., Abbott*, 2012 WL 7810970, at *4 n. 16 ("Federal Circuit opinions are not binding authority on the issue of awarding costs under § 1920."); *see also Arlaine & Gina Rockey, Inc. v. Cordis Corp.*, No. 02–22555–CIV, 2004 WL 5504978, at *17 n. 5 (S.D.Fla. Jan. 5, 2004) ("Decisions by the U.S. Court of Appeals for the Federal Circuit provide controlling authority on the aspects of this case that are unique to patent law[, and] [d]ecisions by the Eleventh Circuit govern issues that are not unique to patent law ...." (internal citation omitted)). But absent any statement from the Eleventh Circuit itself, the Federal Circuit's interpretation of our circuit's law can serve at least as a guidepost for a district court blazing its own trail.

The Federal Circuit in *CBT Flint* reviewed an award of costs made by Judge Thrash. 737 F.3d at 1320. Judge Thrash awarded over $300,000 in e-discovery costs

---

**2.** Defendants state that they request $5,953.05 for costs paid to DTI for "processing data," which they defined as "copying [data] into databases." [215–3] ¶ 6. But that figure excludes a line item from the August 2010 DTI invoice for $27.45 for a "Loading Fee," which the Court considers a processing or data-copying fee. So the total request for costs for processing data is $5,980.50.

**3.** Defendants also apparently request, without saying so, an award of the sales tax paid for services rendered by DTI. By the Court's calculation, Defendants paid $707.91 in sales tax.

**4.** Plaintiffs also argue that Defendants' e-discovery costs cannot be taxed because no ESI was actually produced. Because the Court

holds that these costs are outside the scope of § 1920, addressing this secondary argument would be superfluous.

**5.** For the same reason discussed above with respect to consulting costs, *Arcadian Fertilizer* dictates that e-discovery costs are not taxable under the Eleventh Circuit's narrow definition of "exemplification" in § 1920(4). *See supra* III.B.1.a, at 1308–09. The only possibility for taxing e-discovery costs is as necessary copies. *Cf. Race Tires*, 674 F.3d at 166 (producing ESI cannot be considered exemplification even under a broad definition of that term (citing *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427 (7th Cir.2000) (adopting a broad definition of exemplification in the Seventh Circuit))).

to two defendants after they prevailed on summary judgment in a patent case. *See id.* at 1325. The Federal Circuit divided e-discovery costs into three categories: (1) the cost of "imaging" hard drives containing ESI and processing that single-file "image" to extract individual documents with their original properties and metadata intact; (2) the cost of organizing the extracted documents into a database and then indexing, decrypting, de-duplicating, filtering, analyzing, searching and reviewing those documents to determine which are responsive; and (3) the cost of copying responsive documents onto DVDs or the like for delivery to the requesting party. *See id.* at 1328–29.

The Federal Circuit examined relevant precedent and analyzed the legislative history of the 2008 amendment to § 1920(4). *See id.* at 1326–27. It concluded that category one costs are mostly taxable, *see id.* at 1329–30, that category two costs are mostly nontaxable, *see id.* at 1331–32, and that category three costs are taxable, *see id.* at 1332–33.

The DTI invoices submitted with Defendants' bill of costs show that their e-discovery costs are category two costs: organizing documents into a database, then "index[ing], ... de-duplicat[ing], and filter[ing]" those documents. *Id.* at 1328–29. And according to the Federal Circuit's analysis, category two costs like those are not taxable under Eleventh Circuit law.

In total, Defendants request just over $65,000 in e-discovery costs. Almost $36,000 of the total was incurred for monthly storage on DTI databases. Ev-ery month for nearly two years, DTI billed between one and two thousand dollars for a "Monthly Storage Fee" or for "Monthly Data Storage." [6] In total, Defendants request $35,863.20 for the cost of "storing ... data on DTI's servers."

DTI also billed several hundred dollars every month for a "Monthly User Fee" or a "Monthly User License." [7] Defendants describe these user fees, which total $22,260, as "enabling [their] attorneys and staff to access the [stored] data."

Defendants paid DTI a total of $5,980.05 for "processing data (that is, copying it into databases, de-duplicating the data, and indexing it for searching and review)." The August and October 2010 invoices show that this amount is made up of four line items: $27.45 for a "Loading Fee—one time" of 0.61 gigabytes charged at $45 per gigabyte; $525 for 3.5 hours of "Post Processing Services—Custom Services" at $150 per hour; $1,900.05 for 12.667 gigabytes of "NUIX Processing" at $150 per gigabyte; [8] and $3,528 for 10.08 gigabytes of "Data Processing—Early case assessment" at $350 per gigabyte.

Finally, Defendants paid DTI a one-time fee of $450 for "technical support" or "technical services," which was "necessary to maintain the databases."

The purpose of these costs was to create a dynamic, searchable database of ESI. The costs were paid to create and set up the database, to transfer ESI into the database, to index and organize the ESI on the database, and then to store the ESI on the database and to permit access to the

---

6. The amounts paid for monthly storage ranged from $1,238.40 (from August 2010 to November 2010) to $2,145, 60 (in January 2011).

7. The amounts paid for monthly user fees ranged from $560 (in March and April 2011) to $2,835 (in August 2010).

8. The DTI statement of work describes "NUIX Processing" as creating an index to allow ESI to be organized and searched: "DTI will index all data in Nuix applying key word search terms, date filters, file type filters and all functionality of Nuix."

database for Defendants' lawyers and staff over a two-year period.

■ The Federal Circuit held that such costs are not taxable: "the costs incurred in acquiring, installing, and configuring a new data-hosting server at the offices of [a litigant's] counsel were clearly incurred for the convenience of [the litigant] and are not recoverable." *Id.* at 1331. The Court agrees.[9]

Defendants argue that the database was not for their own convenience; they claim it was mandatory because they had an obligation to preserve documents to avoid spoliation. No doubt Defendants had an obligation to preserve. *See In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F.Supp.2d 1299, 1307 (N.D.Ga.2011) (explaining that a litigant has a duty to preserve documents once litigation is reasonably anticipated and that failing to do so is sanctionable spoliation). But Defendants had no obligation to preserve the documents on a dynamic, indexed and searchable database for nearly two years at a cost of thousands of dollars per month.

Storing documents on a pricey database was Defendant's right, but doing so was for their own convenience. Putting the documents there, rather than on a shelf, allowed Defendants to more easily organize, search and analyze the documents. Defendants admit this, writing that the reason they paid monthly user fees to DTI was so that their own attorneys and staff could access and search the database.

Defendants also argue that storing data in this way was "the only manageable way that [they] could comply with the plaintiffs' document requests given their breadth and the volume of data encompassed by the requests," and that "it is typical to manage data in this fashion in complex litigation when the opposing party seeks voluminous [ESI]."

The Federal Circuit addressed and rejected this argument head-on. It wrote that costs incurred to increase "the efficiency of [Defendants'] own litigation work, to image source drives and upload the images to a document database for faster filtering, searching, and review" are not taxable. *CBT Flint*, 737 F.3d at 1330.

Surely some e-discovery costs are taxable. The DTI work assessment contemplates charging Defendants $0.04 per page for "Subset Tiff Conversion." This refers to converting digital files from a native format [10] to TIFF [11] for final production.

9. The $27.45 "loading fee" could be taxable as a category-one cost as identified by the Federal Circuit. It could conceivably be for processing an image of a hard drive or other media and extracting individual documents from an image file into a database.

But Defendants do not explain what services were rendered in exchange for that $27.45 loading fee. The Court is "unable to discern from the entr[y] on the invoice[] whether the charge[] may be appropriately [taxed]." *In re Scientific–Atlanta, Inc. Sec. Litig.*, No. 1:01–cv–1950–RWS, 2011 WL 2671296, at *1 (N.D.Ga. July 6, 2011). And because "the party seeking to recover costs … bears the burden of establishing entitlement to the costs," the loading fee cannot be taxed if the Court cannot determine its purpose. *Id.* (citing *Scelta v. Delicatessen Support Servs., Inc.*, 203 F.Supp.2d 1328, 1340 (M.D.Fla.2002)).

10. Native format is simply "the file structure defined by the original creating application." The Sedona Conference, *The Sedona Conference Glossary: E–Discovery & Digital Information Management* 35 (Sherry B. Harris et al. eds., 3d ed.2010). Documents created by Adobe Acrobat are native "PDF" files, those created by Microsoft Word are native "DOC" files, et cetera.

11. TIFF stands for "Tagged Image File Format." It is a "graphic file format[] for storing bit-mapped images, with many different compression formats and resolutions" that is "widely used and supported" for e-discovery.

The Court assumes, but does not decide, that converting files to TIFF is the sort of "modern-day equivalent" of paper copying that would be taxable as necessary copying costs. *See Race Tires*, 674 F.3d at 167 ("[T]he conversion of native files to TIFF ... [is] generally recognized as ... taxable 'making copies of materials.'" (quoting *Brown v. McGraw–Hill Cos.*, 526 F.Supp.2d 950, 959 (N.D.Iowa 2007))). But no TIFF conversion occurred in this case because no ESI was ever produced.

Following the Federal Circuit's interpretation of Eleventh Circuit law, the Court holds that none of Defendants' e-discovery costs is taxable.[12]

### b. Third Circuit: *Race Tires*

The Court also finds support for its holding in *Race Tires*, an influential recent case from the Third Circuit.[13] 674 F.3d 158. In *Race Tires*, a district court awarded over $365,000 in costs for e-discovery to defendants who prevailed on summary judgment. The Third Circuit vacated in part, holding that many of the costs were not taxable as necessary copies under § 1920(4). Like the Federal Circuit, the Third Circuit divided e-discovery costs into categories: (1) collecting and preserving ESI; (2) processing and indexing ESI; (3) keyword searching of ESI for responsive documents; (4) converting native files to TIFF; and (5) scanning paper documents to create electronic images. The panel concluded that only the fourth and fifth categories of costs, incurred for "scanning and file format conversion," were taxable. *Id.* at 160.

In this case, the only hint of any such costs is the notation in DTI's work assessment that it would charge $0.04 per page for TIFF conversion. And the invoices show no TIFF conversion occurred.

What of Defendants' argument, discussed above, that e-discovery costs should be taxed because they are necessary to respond to voluminous discovery requests or because they are the only efficient way to comply with preservation obligations? The Third Circuit, like the Federal Circuit, squarely rejected that argument. The Third Circuit surveyed district court orders awarding costs based on similar arguments and found them "untethered from

*Sedona Conference Glossary, supra* note 10 at 50. TIFF is "the agreed-upon default format for production of ESI." *Race Tires*, 674 F.3d at 167.

**12.** Even if e-discovery costs were taxable—perhaps pursuant to a new statement of law from the Eleventh Circuit—Defendants have not provided enough detail for the Court to determine whether their costs can be taxed. It is not clear what tasks DTI performed for each line item on their invoices, and Defendants have not provided the Court with enough information to decipher those invoices. As the "party seeking to recover costs ... bears the burden of establishing entitlement to the costs," *In re Scientific–Atlanta*, 2011 WL 2671296, at *1, the Court would decline to tax these particular e-discovery costs even if e-discovery costs in general were taxable.

**13.** *Race Tires* has been cited approvingly by many courts in the two years since its publication. It has been described by the Fourth Circuit as "persuasive." *See Country Vintner of N.C., LLC v. E & J Gallo Winery, Inc.*, 718 F.3d 249, 260 (4th Cir.2013). District courts have overwhelmingly followed *Race Tires*, writing that it is "comprehensive," *Massuda v. Panda Express, Inc.*, No. 12 CV 9683, 2014 WL 148723, at *5 (N.D.Ill. Jan. 15, 2014), "carefully consider[ed]," *Phillip M. Adams & Assocs., L.L.C. v. Sony Elecs. Inc.*, No. 1:05–CV–64 TS, 2013 WL 5964288, at *4 (D.Utah Nov. 7, 2013), "persuasive," *Trip Mate, Inc. v. Stonebridge Cas. Ins. Co.*, No. 10–793–CV–W–ODS, 2013 WL 3336631, at *1 (W.D.Mo. July 2, 2013); *Phillips v. WellPoint Inc.*, No. 3:10–cv–357–JPG–SCW, 2013 WL 2147560, at *4 (S.D.Ill. May 16, 2013), and "thorough [and] reasonable," *Abbott*, 2012 WL 7810970, at *4. The Court agrees.

the statutory mooring [of § 1920(4) ]." *Id.* at 169. The panel explained that § 1920(4) does not state that all steps that lead up to the production of copies of material are taxable. It does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional. It does not say that activities that encourage cost savings may be taxed. Section 1920(4) authorizes awarding only the cost of making copies. *Id.* (footnote omitted).

What is more, the facts of *Race Tires* were actually more favorable to the prevailing parties than the facts of this case are to Defendants, but costs were still denied. In *Race Tires* the district court issued a case-management order requiring production of ESI in specific ways: in TIFF format unless native was necessary and accompanied by a unitization file showing the Bates number of each page. That order gave the prevailing parties at least a colorable argument that their costs were taxable because they were mandated by the court, not simply incurred for their own convenience. But the Third Circuit was not persuaded. *See id.* at 169.

No such order was issued by this Court. And the parties, so far as the Court can tell, did not agree to any self-imposed requirements about the content or form of e-discovery. So Defendants' arguments that they were required to load documents onto the DTI databases, required to index and organize those documents, and required to maintain those databases for nearly two years, fall flat. They faced no such requirement.

The Court is not alone in refusing to tax the costs of e-discovery, especially after *Race Tires.* As one of our sister district courts wrote, since *Race Tires,* "almost all district courts considering the issue, including district courts within the Eleventh Circuit, have held that the costs of creating and maintaining an electronic discovery database are not recoverable under § 1920." *Abbott,* 2012 WL 7810970, at *3 (collecting cases); *see also CBT Flint,* 737 F.3d at 1335 (O'Malley, J., concurring in part and dissenting in part) ("[S]ince the Third Circuit's decision in *Race Tires,* the majority of district courts have agreed with the Third and Fourth Circuits [that the costs of imaging a hard drive and extracting metadata are not taxable]." (collecting five district court orders)).

In fact, the Court searched high and low for a case that contravenes *Race Tires.* It found but two: *Petroliam Nasional Berhad v. GoDaddy.com, Inc.,* No. C 09–5939 PJH, 2012 WL 1610979, at *4 (N.D.Cal. May 8, 2012), and *In re Online DVD,* 2012 WL 1414111. The latter is discussed above, *see supra* at 1311–12. Both cases were written by the same California district judge and contain an identical paragraph "tak[ing] note" of *Race Tires* but declining to follow it. *Petroliam,* 2012 WL 1610979, at *4; *In re Online DVD,* 2012 WL 1414111, at *1. The judge instead adhered to the Ninth Circuit's "broad construction of § 1920 with respect to electronic discovery costs." *Petroliam,* 2012 WL 1610979, at *4; *In re Online DVD,* 2012 WL 1414111, at *1. In each case the judge cited *Taniguchi,* a Ninth Circuit opinion giving district courts the "free[dom] to interpret the meaning of the cast of categories listed within § 1920." *Petroliam,* 2012 WL 1610979, at *4; *In re Online DVD,* 2012 WL 1414111, at *1 (each quoting *Taniguchi,* 633 F.3d at 1221).

*Taniguchi* was later vacated by the Supreme Court. The Court expressly rejected the Ninth Circuit's broad view: "Because taxable costs are limited by statute and are modest in scope, we see no compelling reason to stretch the ordinary

meaning of the cost items Congress authorized in § 1920." *Taniguchi,* 132 S.Ct. at 2006. These two orders have little force today and do not diminish *Race Tires.*

\* \* \*

In the days of yore, when discovery was conducted with reams of paper documents, no court would have taxed the cost of manually reviewing documents to determine which were responsive, which were irrelevant and which were privileged. *See Race Tires,* 674 F.3d at 169 ("None of the steps that preceded the actual act of making copies in the pre-digital era would have been considered taxable."). Only the cost of actually making copies of the responsive documents was taxable. *See id.*

Likewise today. The cost of converting ESI from a native format to TIFF may be taxable as a modern analogue to photocopying paper documents. *See supra* at 1315–16. Other tasks, such as digitizing paper documents, may also be taxable. *See CBT Flint,* 737 F.3d at 1329–30. But the cost of creating a dynamic, indexed and searchable database is nothing more than an efficient, convenient, modern-day version of paper document review. It cannot be taxed. *See In re Scientific–Atlanta, Inc. Sec. Litig.,* No. 1:01–cv–1950–RWS, 2011 WL 2671296, at \*1 (N.D.Ga. July 6, 2011) (characterizing database keyword searching as the nontaxable "ESI equivalent of having a room full of reviewers physically review paper documents"); *Race Tires,* 674 F.3d at 170 (approving of cases "recogniz[ing] that gathering, preserving, processing, searching, culling and extracting ESI simply do not amount to 'making copies' ").

■ To be sure, it may be more or even most convenient for a producing party to create a database of ESI. But activities undertaken only "for the convenience of counsel are not taxable." *Gupta v. Walt Disney World Co.,* No. 6:05–cv–1432–Orl–

22UAM, 2007 WL 2002454, at \*3 (M.D.Fla. July 5, 2007) (citing *Helms v. Wal–Mart Stores, Inc.,* 808 F.Supp. 1568, 1570 (N.D.Ga.1992), *aff'd,* 998 F.2d 1023 (11th Cir.1993) (table)); *see CBT Flint,* 737 F.3d at 1330 (holding that copying costs are taxable if they are "necessary to make copies of information required to be produced and not incurred just to make copies for the convenience of the producing party").

Defendants are not entitled to an award of their e-discovery costs.

## IV. Conclusion

Defendants' bill of costs [215] and renewed motion for costs [236] are GRANTED IN PART and DENIED IN PART. The Clerk shall tax $1,100.53 to Plaintiffs. All other requested costs are DENIED.