# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-4019

_____

United States of America,

*Plaintiff - Appellee,*

v.

Jose Luis Rodriguez Gutierrez,

*Defendant - Appellant.*

_____

No. 13-1327

_____

United States of America,

*Plaintiff - Appellee.*

v.

Manuel Perez-Sanchez,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: November 22, 2013
Filed: July 8, 2014
_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Jose Rodriguez Gutierrez and Manuel Perez-Sanchez were charged together with drug trafficking offenses. Rodriguez Gutierrez pleaded guilty to one count of conspiracy to distribute methamphetamine, and Perez-Sanchez was convicted by a jury on one count of conspiracy to distribute and five counts of distribution or possession with intent to distribute. Perez-Sanchez received a sentence of 60 months' imprisonment on each count, to be served concurrently. He appeals two evidentiary rulings by the district court[1] and the sufficiency of the evidence to support his conviction. The district court[2] sentenced Rodriguez Gutierrez to 156 months' imprisonment, and he appeals the district court's computation of the advisory range under the sentencing guidelines.

Law enforcement officers in Des Moines began an investigation in late 2011 into the distribution of so-called "ice" methamphetamine in the area.[3] They identified Rodriguez Gutierrez and Perez-Sanchez as participants in the trafficking. Over

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

[2]The Honorable Ronald D. Longstaff, United States District Judge for the Southern District of Iowa.

[3]The United States Sentencing Guidelines define "ice" methamphetamine as "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." USSG § 2D1.1(c) n.(C).

several months of investigation, officers arranged multiple controlled purchases from Rodriguez Gutierrez and Perez-Sanchez. Both men were arrested and charged in May 2012. Rodriguez Gutierrez pleaded guilty, while Perez-Sanchez proceeded to a trial at which he was convicted.

## I.

Perez-Sanchez complains that the district court abused its discretion at trial by allowing a witness for the prosecution to testify as an expert. Steven Rhodes testified that he had reviewed Spanish-language audio recordings of controlled drug transactions involving Perez-Sanchez and prepared written transcripts of the dialogue in English. The district court permitted Rhodes to testify as an expert after Rhodes detailed his qualifications. Rhodes stated that he was fluent in Spanish, received a minor degree in Spanish in college, attended an interpreter orientation class in Iowa in 2007, and passed written and oral examinations to become a state-certified interpreter in Iowa in 2008. Rhodes roughly defined "translation" as taking a recording and typing up a transcript, and "interpretation" as the oral process of converting words from Spanish to English. He said that he was certified in Iowa for both translation and interpretation and that he had testified 25 to 30 times in Iowa state court, including on some occasions that involved "translations" from Spanish to English.

Perez-Sanchez asserts that Rhodes was not qualified to testify as an expert "translator," because his certification in Iowa was limited to work as an oral language interpreter, and he was not certified by any organization as a translator. He relies on the Supreme Court's decision in *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997 (2012), which construed the phrase "compensation of interpreters" in a federal statute concerning the award of costs to prevailing parties, 28 U.S.C. § 1920. The Court concluded that while "the word 'interpreter' can encompass persons who

translate documents," 132 S. Ct. at 2004, the ordinary or common meaning of "interpreter" does not include those who translate writings. *Id*. at 2003.

Under Federal Rule of Evidence 702, a witness may be "qualified as an expert by knowledge, skill, experience, training, or education." Whether a witness is formally certified in a field by a professional organization may be relevant to his expertise, but the rule does not require any particular imprimatur. *United States v. Barker*, 553 F.2d 1013, 1024 (6th Cir. 1977).

There was a sufficient basis here for the district court to conclude that Rhodes was an expert on the matters about which he testified. That Rhodes was a certified and experienced interpreter and fluent in Spanish and English was certainly probative of his expertise. The work about which he testified included converting Spanish *oral* recordings into English, and then preparing a written record of the dialogue in English. As the district court observed, the exercise was a hybrid between pure oral interpretation and pure written translation. Whether or not Rhodes was formally certified by a professional organization as a written translator, he had enough knowledge of the language, skill in interpretation, and experience with both interpretation and translation to justify the district court's receipt of his testimony as that of an expert under Rule 702.

Perez-Sanchez also argues that the district court erred in permitting the jury to read the transcripts that Rhodes prepared. At trial, the court admitted the Spanish-language audio recordings into evidence, and distributed the transcripts to the jury as an aid, but did not admit the transcripts into evidence or send them to the jury room.

Perez-Sanchez does not challenge this procedure, although it appears to be unorthodox. In a case with English-language recordings, the audio recordings typically are the only evidence of the conversation; any transcripts are furnished to the jury merely as an aid in following the audio. *United States v. McMillan*, 508 F.2d

101, 105-06 (8th Cir. 1974). But where the evidence is a foreign-language recording, the jury usually cannot understand the audio recording. Transcripts must be prepared and introduced as evidence so that the jury has a basis for considering the substance of the recording. *United States v. Chavez-Alvarez*, 594 F.3d 1062, 1068 (8th Cir. 2010). In this case, the court did not receive the transcripts as evidence, and the jury presumably could not understand the audio recording. But the transcripts, according to the district court, were "given to the jury to help the jury to whatever extent they can." Perez-Sanchez did not object to the jury's use of the transcripts under this direction.

Perez-Sanchez's claim on appeal is that the transcripts were unreliable. Rhodes admitted that after he first prepared the transcripts, he was required on further review to make about ten corrections per page in a seventeen-page document. That Rhodes made so many corrections, however, did not preclude the court from allowing the jury to consider them. "[I]t is the function of the finder-of-fact to weigh the evidence presented by the parties as to the accuracy of the proffered translation and to determine the reliability of the translation on the basis of that evidence." *United States v. Perez*, 663 F.3d 387, 394 (8th Cir. 2011) (internal quotation omitted). Perez-Sanchez, citing the numerous corrections to the transcripts, challenged Rhodes's capability and reliability. The government responded by eliciting testimony that none of the many corrections were "substantive in nature as to the gist of the conversation." Perez-Sanchez did not offer his own version of the transcript, although he could have done so. *See United States v. Baldenegro-Valdez*, 703 F.3d 1117, 1127 (8th Cir.), *cert. denied*, 133 S. Ct. 2403 (2013). It was for the jury to decide whether the government met its burden to show that the transcripts that Rhodes prepared were reliable enough to weigh against Perez-Sanchez.

In addition to his evidentiary arguments, Perez-Sanchez challenges the sufficiency of the evidence to convict him of either conspiracy to distribute methamphetamine or the substantive counts. We view the evidence in the light most

favorable to the prosecution, accepting all reasonable inferences in favor of the verdict, and affirm unless no reasonable juror could have convicted the defendant. *United States v. Katkhordeh*, 477 F.3d 624, 626 (8th Cir. 2007).

Even without the disputed transcripts, the evidence against Perez-Sanchez was substantial. Crystal Easter testified that Perez-Sanchez and Rodriguez Gutierrez supplied her with methamphetamine. She explained that on two different occasions while cooperating with law enforcement, she called Rodriguez Gutierrez to request methamphetamine, and Perez-Sanchez delivered the drugs. Another witness, Pablo Fernandez Rodriguez, testified that he made multiple controlled purchases of methamphetamine from Perez-Sanchez; on another occasion, Fernandez Rodriguez purchased methamphetamine from Perez-Sanchez's wife, whom Perez-Sanchez sent to make the delivery. For each controlled purchase that formed the basis of a substantive count of conviction, an officer testified about how the transaction was arranged through cooperating informants, explaining that law enforcement provided the funds to make the purchase, searched the informant before and after the encounter, observed and photographed the transaction, and collected the drugs afterward. There was sufficient evidence to permit a reasonable jury to convict Perez-Sanchez on all counts.

II.

Rodriguez Gutierrez appeals only his sentence. He argues that the district court, in calculating the advisory guideline range, erred by increasing his offense level under USSG § 3B1.1 for an aggravating role in the offense. We review the district court's determination of a defendant's role in the offense for clear error. *United States v. Cole*, 657 F.3d 685, 687 (8th Cir. 2011) (per curiam).

According to facts in the presentence report to which Rodriguez Gutierrez did not object, Rodriguez Gutierrez obtained methamphetamine from a supplier and

directed Perez-Sanchez to sell the drugs. Rodriguez Gutierrez also obtained liquid methamphetamine from another supplier and converted it into solid form in his basement. During one transaction in which Perez-Sanchez sold methamphetamine to a confidential informant, the informant questioned the quality of the drug. In response, Perez-Sanchez called Rodriguez Gutierrez, who confirmed that the drugs were "good." In another controlled transaction, the buyer called Rodriguez Gutierrez to request drugs, and he sent Perez-Sanchez to make the sale. After Perez-Sanchez's arrest, he told law enforcement officers that he obtained methamphetamine from Rodriguez Gutierrez and that Rodriguez Gutierrez directed him to bring the proceeds of the sale back to him after the transaction.

Based on this evidence, the district court found that Rodriguez Gutierrez was "an organizer, leader, manager, or supervisor" of at least one other participant in the criminal activity, and increased his offense level by two levels under USSG § 3B1.1(c). The determination was not clearly erroneous. Rodriguez Gutierrez oversaw distribution by Perez-Sanchez, supplying the drugs, directing Perez-Sanchez to the customers, and controlling the proceeds of the transactions. This evidence was sufficient to support a finding of an aggravating role. *See, e.g.*, *United States v. Frausto*, 636 F.3d 992, 996 (8th Cir. 2011). There was no procedural error.

\* \* \*

The judgments of the district court are affirmed.

_____