RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0173p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WALESKA A. VELEZ; KIMBERLY M. HATCHER,
    *Plaintiffs-Appellants,*

    *v.*

CUYAHOGA METROPOLITAN HOUSING AUTHORITY,
    *Defendant-Appellee.*

No. 14-3978

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:13-cv-01022—Christopher A. Boyko, District Judge.

Argued: April 30, 2015

Decided and Filed: July 30, 2015

Before: KETHLEDGE and WHITE, Circuit Judges; LUDINGTON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Peter M. Iskin, LEGAL AID SOCIETY OF CLEVELAND, Cleveland, Ohio, for Appellants. Kathryn M. Miley, WILKERSON & ASSOCIATES CO., LPA, Cleveland, Ohio, for Appellee. **ON BRIEF:** Peter M. Iskin, Maria A. Smith, LEGAL AID SOCIETY OF CLEVELAND, Cleveland, Ohio, for Appellants. Kathryn M. Miley, Ernest L. Wilkerson, Jr., WILKERSON & ASSOCIATES CO., LPA, Cleveland, Ohio, for Appellee.

_____

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

**OPINION**

---

LUDINGTON, District Judge. The question raised on appeal in this case is whether fees charged by lessors for lease terms shorter than one year are "rent" under Section 8 of the Housing Act of 1937 ("Act").[1]  Appellants Waleska Velez and Kimberly Hatcher, Plaintiffs below, appeal the district court's order denying their motion for summary judgment and granting Appellee Cuyahoga Metropolitan Housing Authority's ("CMHA") motion for summary judgment. Appellants argue that the district court incorrectly determined that the term "rent," as used in the Act and its accompanying regulations, does not encompass the fees charged by lessors on short-term leases.

Because the subject fees are an expense payable by the lessees for the occupancy of the rental unit, we conclude that the expenses are part of the lessees' rent under the Act.  We reverse. Further, we remand to the district court for proceedings consistent with that conclusion.

**I.**

The underlying facts that are germane to the legal issues on appeal are few.  Appellants are two individuals who qualify for the Section 8 low-income housing assistance voucher program, known as the Housing Choice Voucher Program.  42 U.S.C. § 1437f(o).

**A.**

Title 42 U.S.C. § 1437f codifies Section 8 of the Housing Act of 1937.  Pub. L. No. 75-412, 50 Stat. 888, 891.  Under this provision the relevant housing authority (at the time, the U.S. Housing Authority—now, the U.S. Department of Housing and Urban Development (HUD)) was authorized to make loans and contributions to local public housing authorities to assist in the construction and administration of "low-rent housing" (i.e., public housing projects) for "families of low income."  50 Stat. at 888, 891.  In its original form, the Act did not provide for a tenant-based housing subsidy program.  Section 8 read:  "The Authority may from time to time make,

---

[1]The case below has also generated a related appeal.  That appeal is docketed as Case No. 14-4019.

amend, and rescind such rules and regulations as may be necessary to carry out the provisions of this Act." *Id*. at 891.

In 1974, Congress amended the Housing Act to "significantly enlarge[] HUD's role in the creation of housing opportunities." *Hills v. Gautreaux*, 425 U.S. 284, 303 (1976) (citing Housing and Community Development Act of 1974, Pub. L. No. 93-383, sec. 201, § 8, 88 Stat. 633, 662–66). In the 1974 amendatory act, Congress authorized the first permanent tenant-based rental housing assistance program—the Section 8 Rental Certificate Program—which allowed the use of federal funds to subsidize a tenant's monthly rental housing costs.[2] "Building on the success of the Certificate Program," 80 Fed. Reg. 8243, 8244 (Feb. 17, 2015), Congress created the Housing Choice Voucher Program in 1983.[3] *See* Housing and Urban-Rural Recovery Act of 1983, Pub. L. No. 98-181, sec. 207, 97 Stat. 1155, 1181–82 (codified as amended at 42 U.S.C. § 1437f(o)).[4] The provisions governing the voucher program are at issue here.

Under the Section 8 Housing Choice Voucher Program, 42 U.S.C. § 1437f(o), and its accompanying regulatory framework, *see* 24 C.F.R. § 982, certain low-income individuals qualify to receive housing assistance vouchers that subsidize the cost of renting privately-owned housing units. Under the program, HUD "pays rental subsidies so eligible families can afford decent, safe and sanitary housing." 24 C.F.R. § 982.1(a). The voucher program is administered "by State or local governmental entities called public housing agencies (PHAs)," such as CMHA. *Id*.

The Act and regulations contain various provisions that govern the amount of the rental subsidy paid by a public housing agency on behalf of a low-income tenant. The regulations refer to subsidy payments by the public housing agency on behalf of a low-income renter as "housing assistance payments." These payments are defined as "[t]he monthly assistance payment by a

---

[2]Congress created the Experimental Housing Allowance Program in 1970, the first tenant-based rental housing assistance program. *See* Housing and Urban Development Act of 1970, Pub. L. No. 91-609, sec. 504, 84 Stat. 1770, 1786–88.

[3]The voucher program was later made permanent in 1988. *See* Housing and Community Development Act of 1987, Pub. L. No. 100-242, sec. 143, 101 Stat. 1815, 1850–51 (1988).

[4]Congress subsequently consolidated the certificate and voucher programs in 1998. *See* Quality Housing and Work Responsibility Act of 1998, Pub. L. 105-276, sec. 545, 112 Stat. 2518, 2596–604.

PHA, which includes: (1) A payment to the owner for rent to the owner [sic][5] under the family's lease; and (2) An additional payment to the family if the total assistance payment exceeds the rent to owner." 24 C.F.R. § 982.4(b). In turn, the regulations define "rent to [the] owner" as "[t]he total monthly rent payable to the owner under the lease for the unit. Rent to owner covers payment for any housing services, maintenance and utilities that the owner is required to provide and pay for." *Id*.

**B.**

Appellants are tenants receiving subsidy payments under the voucher program. Appellant Velez has participated in the program since February 4, 2012. Am. Proposed Stipulations, ECF No. 26, Page ID 279. Appellant Hatcher has participated in the program since July 1, 1999. *Id*. at 281. Both Appellants initially entered into one-year leases with third-party defendant The K&D Group, Inc. ("K&D"). At the end of the one-year lease terms they renewed their leases for terms less than one year. The standard lease designates "RENT" as a specified amount to be paid per month. *Id*. at 293. The lease further provides: "If Resident(s) shall holdover after the end of the term of this Rental Agreement, said holdover shall be deemed a tenancy of month to month and applicable month to month fees shall apply." *Id*. The lease does not prescribe the amount of the month-to-month fee. K&D maintains a separate policy establishing the month-to-month fee, *id*. at 280, and lessees are notified of the fee when K&D issues lessees a "Lease Renewal Notice," *id*. at 308.

Velez entered into a month-to-month tenancy after her initial one-year term expired in 2013 without executing a new agreement, *id*., and Hatcher entered into two separate month-to-month tenancies, in 2007 and 2012, and, in 2011, a nine-month lease agreement, *id*. at 283–86. Under each of these short-term agreements, K&D charged Appellants Velez and Hatcher monthly month-to-month and short-term lease fees.[6] These fees varied in amount based upon the length of the short-term lease but ranged between $35.00 per month for the nine-month lease

---

[5]Although not made clear in the regulations' definition of "housing assistance payment," "rent to the owner"— or "rent to owner" as it is denoted elsewhere—has a specific meaning under the regulations. Consequently, the apparent redundancy in the definition is readily explained by reference to the definition for "rent to owner."

[6]For consistency, the fees will be referred to as short-term fees, rather than both month-to-month and short-term fees.

term and $100.00 per month for the month-to-month lease.  K&D imposed these fees as a means of recovering the increased turnover expenses, marketing costs, and market risks associated with shorter-term leases.

Both parties acknowledge that this practice, while not unusual, is not uniform.  Some lessors choose to account for the risks and costs of shorter leases by increasing the monthly rent charge in the lease rather than identifying them as a discrete charge.

It was CMHA's policy not to treat these short-term rental fees as rent under the voucher program. *Id*. at 276–77.  Under its policy, the fees would not be submitted to CMHA for calculation of Appellants' eligible voucher subsidy.  As a result of the policy, Appellants Velez and Hatcher were required to pay the entire amount of the fees.

## C.

On May 7, 2013, Appellants Velez and Hatcher filed a claim pursuant to 42 U.S.C. § 1983 against CMHA in the Northern District of Ohio.  They claimed that the short-term fees imposed upon them are rent under the Act. Appellants sought injunctive relief as well as damages in the amount of the unpaid subsidies related to the short-term rental fees they paid.

On July 3, 2013, CMHA filed a third-party complaint against K&D seeking indemnity and contribution in the event the district court determined the fees were properly considered as rent.  CMHA took the position that if the fees are rent, K&D should have been submitting the fees as part of the rent charge, which CMHA would have used to calculate the subsidies it paid.  K&D's failure to do so, CMHA claimed, renders K&D liable to CMHA in any amount CMHA would be liable to Appellants.

On February 14, 2014, Appellants Velez and Hatcher and Appellee CMHA filed cross-motions for summary judgment.  ECF Nos. 42 & 44.  Appellants claimed that the short-term fees were rent and that they were, accordingly, entitled to damages from CMHA.  Appellee CMHA took the opposite position, that the fees were not rent and that its policy of treating them in such a manner was consistent with the Act.  It also argued, in the alternative, that K&D was contributorily liable to CMHA if the district court determined that the fees were rent.  On March

10, 2014, third-party Defendant K&D filed a motion for summary judgment against CMHA.[7] ECF No. 47. K&D argued that it had put CMHA on notice of the fees when it sought guidance from CMHA in 2010 on whether they should be treated as rent. CMHA expressly informed K&D that the fees were separate from rent.

The district court issued an Opinion and Order granting CMHA's motion for summary judgment against plaintiffs on September 16, 2014. Op. & Order, ECF No. 63. The district court held that the short-term fees were not rent. Pursuant to this holding, the district court denied Plaintiffs' motion for summary judgment against CMHA, denied CMHA's motion for summary judgment against K&D as moot, and granted K&D's motion for summary judgment against CMHA.

Velez and Hatcher appeal the district court's decision holding that the fees are not rent.

## II.

"We review a district court's grant of summary judgment *de novo*." *Cass v. City of Dayton*, 770 F.3d 368, 373 (6th Cir. 2014). A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

The primary issue presented by the appeal concerns the definition of rent in 42 U.S.C. § 1437f and its attendant regulations. The issue is whether the definition of rent in Section 8 of the Act includes the short-term rental fees charged to tenants. If so, public housing authorities, such as CMHA, would be required to pay rental voucher subsidies on the short-term rental fees imposed by lessors. Appellants contend that these fees constitute rent paid for the use of their housing unit, irrespective of how the lessors account for the fees. Appellee responds that they are mere convenience fees, charged by the lessors as consideration for the increased costs associated with administering leases with shorter rental terms.

---

[7]CMHA's February 14, 2014 motion for summary judgment included a claim for judgment against K&D.

**A.**

The term "rent" is used extensively throughout § 1437f and its regulations but is not defined in the context of the Housing Choice Voucher Program, § 1437f(o).[8] Nor is rent defined in any other provision of the Housing Act or its regulations despite also being used extensively therein.[9] In light of this consistent usage and absent any reason justifying the contrary, the definition of rent throughout the Act, not only in Section 8, must be uniform. *See Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears."). *But see Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433-34 (1932) (holding that the presumption of uniformity gives way "[w]here the subject-matter to which the words refer is not the same in the several places where they are used").

**1.**

In determining what Congress intended when it referred to rent in the Housing Act of 1937, we look to the traditional rules of statutory construction. The beginning point is the text of the Act. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003). If the meaning of rent is "unambiguous, the judicial inquiry is complete." *Id.* (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–254 (1992)) (internal quotation marks omitted). Further, "where Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989) (quoting *NLRB v. Amax Coal Co.,* 453 U.S. 322, 329 (1981)). When interpreting federal law, we draw on

---

[8]The Act does provide that "the terms 'rent' or 'rental' mean, with respect to members of a cooperative, the charges under the occupancy agreements between such members and the cooperative." 42 U.S.C. § 1437f(f). Although this definition of rent is limited to "members of a cooperative," it supports the view that Congress intends that rent means the charges under occupancy agreements.

[9]HUD, as the regulatory authority delegated the power of administering the Act, may define in its regulations what rent means in the Housing Act of 1937. This definition would, of course, be subject to review. The Supreme Court has determined, however, that HUD is entitled to deference in its interpretation of the Act. *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 430 (1987). HUD has yet to define rent.

Before its repeal in March 2000, HUD regulations provided an admission preference (into a Section 8 program) for families with rent burdens—i.e., applicants who pay more than 50% of their family income in rent. Those regulations defined "rent" to mean the "actual monthly amount due under a lease or occupancy agreement between a family and the family's current landlord; and for utilities purchased directly by tenants from utility providers[.]" 24 C.F.R. § 5.430 (1999), *repealed by* 65 Fed. Reg. 16,692, 16,716 (Mar. 29, 2000).

federal definitions, not definitions that arise under the common law of discrete states. *Id.* (noting that an express purpose of copyright law was creating uniform federal copyright regulation, thus federal, not state, agency law must be relied upon).

"A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). Thus, when determining what definition was intended by Congress, we must look to the time the statute was enacted. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2003, (2012) (drawing on dictionary definitions from time statute in question was enacted). The Court must look to the definition of rent in 1937 to determine what Congress meant when it enacted the statute.

Shortly after Congress enacted the Act, the Supreme Court reaffirmed the prevailing federal definition of rent: "Rent is a fixed sum, or property amounting to a fixed sum, to be paid at stated times for the use of property[.]" *M.E. Blatt Co. v. United States*, 305 U.S. 267, 277–78 (1938) (quoting *Duffy v. Cent. R. Co. of N.J.*, 268 U.S. 55, 63 (1925) (defining the term "rentals")) (internal quotation marks omitted). Dictionaries around the time of enactment similarly understood rent as the amount paid to use the rental dwelling. The legal definition of rent recognized by a contemporary edition of Webster's New International Dictionary was:

> The return made by the tenant or occupant of land or corporal hereditaments to the owner for the use thereof; a certain periodical profit, whether in money provisions, chattels, or services, issuing out of lands and tenements in payment for the use; commonly, a certain pecuniary sum agreed upon between a tenant and his landlord, for the use of land or its appendages; as, rent for a farm, a house, a park, etc.

"Rent, n. 4.a",[10] Webster's New International Dictionary (2d. ed., 1935); *see also* Webster's New International Dictionary (2d. ed., 1939) (providing same definition).

The 1974 amendatory act similarly understands rent. In the 1974 Act, Congress amended Section 8 to authorize "assistance payments" "[f]or the purpose of aiding lower-income families

---

[10]While the legal definition appears at the fourth entry, the first entry differs only in its comparative generality: "A render; a return or payment receivable from another or chargeable on land, as an annuity or corody; also, the property charged with such a payment; hence, revenue; income." In addition, the first three lines of definitions were all, by 1935, recognized to be obsolete. *See also* "Rental, n. 4," Webster's New International Dictionary (2d. ed., 1935) (equating the definition of "rental" to the definition of "rent": "= RENT, 4 a.") and Webster's New International Dictionary (2d. ed., 1939) (same).

in obtaining a decent place to live and of promoting economically mixed housing." 88 Stat. at 662. This housing assistance program authorized PHAs to enter into "assistance contracts" with owners of private dwellings, which must "provide that assistance payments may be made only with respect to a dwelling unit under lease for occupancy by a family determined to be a lower income family at the time it initially occupied such dwelling unit . . . ." *Id*. at 664. The assistance contract establishes "the maximum monthly rent (including utilities and all maintenance and management charges) which the owner is entitled to receive for each dwelling unit with respect to which such assistance payments are to be made." *Id*. at 663. The 1974 Act thus understands rent as the amount the "owner is entitled to receive" under the "lease for occupancy." Rent operates, then, as the sum paid to live in and make use of rental property. Further, rent had the same meaning in 1974 as in 1937. *Cf*. "Rent, n. 3.a", Webster's New International Dictionary 1923 (3d ed. 1976) (materially the same as 1935 edition); American Heritage Dictionary 1102 (New College ed. 1976) (materially the same); Black's Law Dictionary 1166 (5th ed. 1979) ("Consideration paid for use or occupation of property. . . . At common law, term referred to compensation or return of value given at stated times for the possession of lands and tenements corporeal.").

Similar to the 1974 Act, the 1983 Act authorizes "monthly assistance payment[s]" to owners on behalf of qualifying families. 97 Stat. at 1181. Importantly, under the voucher program (as with the certificate program), the monthly assistance payment subsidizes a family's monthly rent; the family pays in rent the amount required by the lease minus the assistance payment. Although not explicit, the 1983 Act operates under the same assumption as the 1974 Act that the family pays a monthly sum to the owner in exchange for its use and occupancy of the housing. And, again, the dictionary definition of rent remained materially unchanged between 1974 and 1983. *Cf*. Webster's New International Dictionary 1923 (3d ed. 1981) (same as 1976 edition); Webster's New Collegiate Dictionary 998 (9th ed. 1985) (materially the same). We conclude that, based on the plain meaning of the word in context, rent in Section 8 of the

U.S. Housing Act means the amount paid under the lease for the use and occupancy of the property.[11]

Under the prevailing definition of rent, the short-term fees at issue are rent. That means the fee is "a fixed sum . . . paid at stated times for the use of property[.]" *Blatt*, 305 U.S. at 277–78 (internal quotation marks omitted). The definition of rent plainly includes the tenant's total expense for the use of land during the term of occupancy.

Appellants do not appear to dispute Appellee's assertion that the lessors who employ a short-term fee do so because of the increased expense associated with the risks and costs of a shorter lease term. But any rent charge, which is no more than the price of occupying property for a specific period of time, includes such risks and costs. The price for the tenant's occupancy takes into account the term of rental, regardless of whether the term is for three months or twelve months. Indeed, "the prices charged by suppliers convey information on how they value the effort and inputs needed for production." "Price," A Dictionary of Economics (4th ed., 2013). The increased rental charge for shorter leases is nothing more than a cost-accounting device employed by lessors to reflect that they have increased effort, expenses, and risks that are associated with the shorter occupancy. The best evidence of this, in this case, is the fact that some lessors simply respond to the increased cost of short-term leases by increasing the rental rate.

Merely recasting the charge as a short-term fee, rather than as a rent charge, does not change the fact that it is consideration paid by the tenant for use of the rental unit. *See United States v. Pileggi*, 192 F.2d 878, 879 (2d Cir. 1951) ("[I]t is settled that 'rent' is received or demanded when a tenant is required as a condition of rental to purchase or pay for a service he does not want regardless of the person to whom the money must be paid."). Neither party argues that these fees, despite not always being nominally designated as rent, were in any way optional.

---

[11]The general definition adopted by the Supreme Court in the early portion of the twentieth century has been adopted, unaltered, by other courts up to the present day, including this Court. *See Wuebker v. C.I.R.*, 205 F.3d 897, 904 (6th Cir. 2000) *abrogation recognized on other grounds by Aeroquip-Vickers, Inc. v. C.I.R.*, 347 F.3d 173, 180 (6th Cir. 2003) ("Rent is defined as '[c]onsideration paid . . . for the use or occupancy of property . . . .'" (quoting Black's Law Dictionary 1299 (7th Ed. 1999))); *Aujero v. CDA Todco, Inc.*, 756 F.2d 1374, 1376 (9th Cir. 1985) (citing Black's Law Dictionary (1979) in defining rent as "consideration paid for use or occupation of property"). These later definitions helpfully demonstrate that courts have not recognized any material change in the definition of rent up to the present day.

*See, e.g.*, Nov. 2007 Hatcher-K&D Lease, Am. Proposed Stipulations, ECF No. 26-1, Page ID 315–16 (providing for short term fee payment with rent charge as one "rental payment," the nonpayment of which "shall be cause for eviction under the appropriate sections of the applicable code").**12** Instead, it was a monthly charge that the tenants were required to pay to continue occupying the rental unit.**13**

Furthermore, treating these discrete fees as outside the ambit of rent would create incongruities in the Act's treatment of short-term leases. As acknowledged in the parties' papers, some lessors choose to assess the additional charge in the form of an increased monthly rent payment, rather than as a discrete charge. Tenants that enter into short-term leases that have a single, increased rent charge would have their full amount of rent qualify for subsidy under the Act. Conversely, tenants entering into short-term leases that impose two separate charges would not. The definition of rent encompasses all monies paid in consideration for the periodic use of property not simply the discrete charge labelled as rent in a lease agreement.

Appellee seeks support for its position in the testimony of two experts upon which it relied at the summary judgment stage. Both experts, according to Appellee, testified during deposition that the short-term rental fee "compensate[d] the landlord for risks in having a short-term tenant." Appellee's Br. 10. But, as explained above, the administrative and transactional costs associated with the duration of that lease are always a factor in the rental price. The rental value of a property with no term or time limitation**14** should equal the price of acquiring the fee simple absolute estate. By contrast, the lessor-lessee relationship—a term of years estate—is defined by the fact that it "endure[s] for any fixed or computable period of time." Restatement (Second) of Property, Land. & Ten. § 1.4 (1977). Since rent, no matter how it is characterized in a lease, is the price paid for the lessee's use of the property for a distinct period of time, the lease term and physical occupation of the property by a tenant cannot be separated. That is, the length

---

**12**This is the only rental agreement between the parties that specifically denotes the fee. All other short-term fee agreements were default rollover agreements that were automatically renewed on a month-to-month basis following an original one-year lease agreement. It should be noted that this agreement includes the fee under the section of the lease titled "Rent" and reads: "Resident(s) will pay $799.00 +$ 75.00 Month to Month Fee=$ 874.00 per calendar month for rental payments plus the monthly URC, payable in advance and without demand on or before the 1st day of each month for a term of one year." *Id.* (sic to formatting throughout).

**13**Allowing a lessor the ability to divide out mandatory, discrete charges related to the usage cost of the rental unit is not only not authorized by the Act, it would completely defeat the statutory subsidy scheme.

**14**If such a thing could be conceived, as Appellee argues it can.

of time a tenant is permitted to make "use" of a rental property is necessarily and always circumscribed by the term of the agreement authorizing the use.

Because there is no rational legal or economic reason to consider the short-term lease fees as separate from rent, the judgment of the district court is reversed.

**2.**

Appellee argues, in the alternative, that even if the short-term fees are "rent" under the Act, it still is not liable for payments not made on those fees. This is so, CMHA asserts, because the regulations require that the tenants submit the fees for reimbursement as rent. Since they did not, they forfeited their ability to now claim the lost subsidies.

The district court did not reach Appellee's argument that Appellants did not properly submit the fees for subsidization. For that reason, this issue will be remanded for proper consideration by the district court.

**B.**

CMHA also argues that some of Appellant Kimberly Hatcher's claims are time-barred by the applicable statute of limitations. Appellee's Br. 19. As with Appellee's prior argument, this issue was not decided by the district court. It will also be remanded for a determination of the applicability of the relevant statute of limitations.

**IV.**

The district court's Order granting summary judgment to Appellee CMHA and denying summary judgment to Appellants is **REVERSED**. The case is **REMANDED** for proceedings consistent with this opinion.