GRIFFITH, Circuit Judge,
concurring in part and concurring in the judgment:
The majority is correct that section 1908(e) authorizes the Coast Guard to accept a quid in return for the quo of releasing the ship. That quid is a “bond or other surety.” 33 U.S.C. § 1908(e). Rather than find that the Security Agreements in this case qualify as a “bond or other surety,” however, the majority bypasses the text of the statute and resorts to its own reasoning: the greater power granted by the statute to hold the ship must surely include the lesser power to condition its release. And as a matter of logic, that seems right. However, nothing in the text expressly authorizes such a broad, free-floating quid pro quo authority. Unlike the majority, I would not decide whether such authority exists by implication. Instead, I would affirm the judgment of the district court on the narrower ground provided by the text of the statute: a “bond or other surety” — the quid provided by Congress — includes the Security Agreements in this case.
As the majority recognizes, Congress has given the Coast Guard wide discretion in setting the conditions of a bond or other surety. My point is only that such discretion comes from an explicit statutory grant allowing the Coast Guard to accept a “bond or other surety.” Apart from that authority, nothing in the express language of the statute permits a quid pro quo exchange and ignoring the phrase “bond or other surety” renders that provision superfluous.
Once a ship’s clearance has been refused or revoked, the statute authorizes the granting of clearance “upon the filing of a bond or other surety satisfactory to the Secretary.” 33 U.S.C. § 1908(e). Because the phrase “bond or other surety” is not qualified or defined, the phrase must be given its “ordinary meaning,” Taniguchi v. Kan Pac. Saipan, Ltd., — U.S. -, 132 S.Ct. 1997, 2002, 182 L.Ed.2d 903 (2012), which includes both financial and non-financial conditions. A bond, for example, is simply a “written promise to pay money or do some act if certain circumstances occur or a certain time elapses.” BlaCK’s Law Dictionaey (10th ed.2014) (emphasis added); see also Merriam-Webster Unabridged Dictionary (online ed.2015) (defining “bond” as “a usually formal written agreement by which a- person undertakes to perform a certain act (such as to appear in court or fulfill the obligations of a contract) or abstain from performing an act (such as committing a crime) with the condition that failure to perform or abstain will obligate the person ... to pay a sum of money” (emphasis added)). A surety is similarly broad: a “formal assurance,” especially “a pledge, bond, guarantee, or se *332 curity given for the fulfillment ef an undertaking.” Blaok’s Law DictionaRY (10th ed.2014); see also Mermam-WebsteR Unabridged DiCtionary (online ed.2015) (defining “surety” as “a pledge or other formal engagement given for the fulfillment of an undertaking”).
These definitions demonstrate that both bonds and sureties are general contractual devices used to assure performance of some act. The text of the statute nowhere limits these ordinary meanings to financial conditions alone.
The cardinal rule of statutory construction — that the legislature says in a statute what it means and means what it says— cautions against overlooking the text and relying instead on what a court might think is an unstated principle that informs the provision. See Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Reading the statute for what it says, the Security Agreements comfortably fit within the authorization to demand a “bond or other surety” in exchange for the release of the ship. Each Agreement requires the ship owner to post a “Surety Bond” to “ensure performance of th[e] Agreement” and the payment of any fines or penalties. To perform the Agreement, the ship owner must waive objections to jurisdiction and assist in the investigation, for example by paying for lodging and meals for the crew to remain in the United States. The United States may keep the bond amount not only if it secures a judgment against the owner, but also if the owner “fail[s] to waive objections to jurisdiction as required by this Agreement.” And it may keep a certain portion of the bond amount if the ship owner materially breaches the Agreement’s other conditions. Thus, as with any bond or surety, the Agreements bind the ship owners “to perform [] certain act[s]” — waive objections to jurisdiction and assist in the investigation — “with the condition that failure to perform ... will obligate the [ship owners] ... to pay a sum of money.” Merriam-Webster Unabridged Dictionary (online ed.2015) (defining “bond”).
The appellants challenge this reading of the statute, arguing that a phrase in the legislative history shows the Coast Guard lacks the power to impose non-financial conditions for the release of a ship:
To assure payment of any fine or civil penalties that might be incurred upon completion of criminal proceedings or civil penalty actions, the Secretary of the Treasury is required to refuse or revoke clearance to any ship upon request of the Secretary of Transportation. However, clearance may be granted upon the filing of a bond or other satisfactory surety.
H.R.Rep. No. 96-1224, at 17 (1980), reprinted in 1980 U.S.C.C.A.N. 4849, 4864 (emphasis added). According to the appellants, “[t]o assure payment of any fine or civil penalties” means that the bond or surety must be limited to covering the payment of a fine. Leaving to one side the debate about the value of legislative history in statutory interpretation, see Samantar v. Yousuf, 560 U.S. 305, 326-27, 130 S.Ct. 2278, 176 L.Ed.2d 1047 (2010) (Sca-lia, J., concurring in the judgment), we have consistently held that where the statutory text is clear, “[t]he plain meaning of legislation should be conclusive” unless it “compels an odd result.” Engine Mfrs. Ass’n v. EPA 88 F.3d 1075, 1088 (D.C.Cir.1996) (internal quotation marks omitted); Nat’l Pub. Radio, Inc. v. FCC, 254 F.3d 226, 231 (D.C.Cir.2001). Here, nothing odd results from imposing conditions that assist the United States in its prosecution of violations of the Act to Prevent Pollution from Ships. We would be stepping beyond the bounds of the judicial role were *333 we to disregard the text of the statute based on a phrase in a House Report.
In any event, the appellants make too much of this phrase. The language from the House Report upon which the appellants rely does not limit a bond or other surety to financial conditions. Instead, it offers that one purpose of section 1908(e) is to make sure that fines are paid. But any likelihood of obtaining a fine vanishes if the United States cannot secure the conditions included in the Security Agreements here. For instance, if ship owners do not waive objections to jurisdiction, the United States may lack jurisdiction to prosecute them after granting clearance. No prosecution means no fine, in which case the United States must return the bond amount to the ship owners. Recognizing this problem, the appellants conceded at oral argument that a “bond or other surety” could, at a minimum, contain an obligation to waive objections to jurisdiction. Appellants then suggested a new line between non-financial conditions that are jurisdictional and those that are not. But that line, like the distinction the appellants urge between financial and other conditions, has no basis in the text of the statute.
For these reasons, I would affirm the judgment of the district court on the ground that the Security Agreements are the type of “bond or other surety” that the statute’s plain text authorizes the Coast Guard to accept in exchange for the release of the ship.